Tina Marie HURST, et al., Respondent,

v.

Steven E. JENKINS, Appellant.

No. WD 50362.

Missouri Court of Appeals,
Western District.

Aug. 29, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 3, 1995.

Application to Transfer Denied
Nov. 21, 1995.

Donald C. Bollard, Steven F. Coronado, Sherman, Taff & Bangert, Kansas City, for appellant.

Andrew J. Gelbach, Warrensburg, for respondent.

Before FENNER, C.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Steven E. Jenkins was found liable in a wrongful death action relating to an automobile collision in which Gary Hurst, Sr., was killed. A jury awarded damages in the amount of $850,000 to Mr. Hurst's family

("the Hursts"),[1] and the trial court's judgment further awarded the Hursts an additional $90,123.35 in prejudgment interest, pursuant to § 408.040, RSMo 1994.[2] Mr. Jenkins appeals the award of prejudgment interest.

Mr. Jenkins raises two points on appeal, claiming (1) that the trial court erred in awarding prejudgment interest because the Hursts did not make a proper settlement demand as required by § 408.040; and (2) that prejudgment interest was not appropriate, since Mr. Jenkins' insurance carrier agreed to pay the Hursts its policy limit, as requested by their attorney. The judgment is affirmed.

On May 22, 1993, automobiles driven by Mr. Jenkins and Tina Hurst were involved in a near head-on collision on Highway 13, near the city limits of Warrensburg, Missouri. The car driven by Mr. Jenkins was headed north, but apparently crossed the centerline of the highway, where it struck Mrs. Hurst's southbound automobile. Gary Hurst, Sr., who was a passenger in Mrs. Hurst's car, was killed. Gary V. Hurst, Jr., and Matthew Hurst were also passengers in the Hurst vehicle. They, along with Mrs. Hurst, suffered injuries as a result of the accident. Mr. Jenkins admitted to consuming alcohol before the accident, and he was charged with involuntary manslaughter and assault in the second degree.

Mr. Jenkins' insurance carrier, Northland Insurance Company, relied on Gregory Scott of Custard Insurance Adjusters, Inc., to investigate the matter. On May 27, 1993, the Hursts' counsel sent Mr. Scott a letter registered by certified mail. The letter requested documentation and information regarding Mr. Jenkins' insurance coverage and his net worth, as well as a statement detailing his version of the accident. After listing these requests, the letter stated, in pertinent part:

In accordance with Missouri Revised Statute 408.040, this letter is a formal demand for payment of the policy limits of all liability insurance coverages that apply to this case. My willingness to recommend a policy limits settlement with my clients is conditioned upon the above events occuring [sic] and this documentation being provided to me *timely*. My willingness to recommend a policy limits settlement is open for 60 days from the date of this letter.

Jeannine Flentje, a casualty claims examiner for Northland, responded to the above correspondence in a letter dated June 1, 1993, stating:

We will not be disputing coverage in this matter. I understand that this will be an obvious payment of our policy limits for the death of Gary Hurst, Sr.; however, I am requesting from you a copy of any medical records or documentation you have supporting the injuries suffered by his wife and children. I will need some type of information verifying their injuries and damages before I am able to make payment on their claim. I have instructed Greg Scott to work with you and your clients in order to settle the property damage claim. Upon reaching settlement with Greg, I will be able to forward you a check for the property damage loss.

Ms. Flentje also enclosed a copy of the certified policy covering Mr. Jenkins' automobile at the time of the accident, which revealed that Mr. Jenkins carried $25,000 in bodily injury coverage per person and $50,000 per occurrence. He carried property damage coverage of $25,000. Ms. Flentje indicated that, to her knowledge, this was the only policy taken out by Mr. Jenkins.[3]

On July 27, 1993, the attorney for the Hursts sent a certified letter to Ms. Flentje stating, in pertinent part:

---

1. Gary Hurst, Sr., was survived by his wife, Tina Marie Hurst; two children born of their marriage, Gary V. Hurst, Jr., and Matthew Hurst; three children from a previous marriage, Brian Hurst, Jonathan Hurst, and Heather Hurst-Ward; and Mr. Hurst's parents, Doris Hurst and Rudolph Hurst.

2. All statutory references are found in the Revised Statutes of Missouri 1994.

3. Ms. Flentje referred the Hursts to Mr. Jenkins' personal attorney for the additional information which had been requested.

On May 27, 1993, I wrote to Gregory Scott, your representative, advising that my clients would settle the wrongful death case for $25,000, and my clients would settle all of the personal injury claims for $25,000 which was represented to be the "policy limits" of all liability coverages Mr. Jenkins had in full force and effect on May 22, 1993. In accordance with Missouri Revised Statute 408.040, that offer was open for 60 days. As you know, that time period has now come and gone and no money has been paid by your company and no settlement has been reached or finalized. In fact, Mr. Scott and your company have wrongfully failed and refused to do many of the things I requested in my letter of May 27, 1993.

.    .    .    .    .

As a result of your company's entire handling of this most tragic incident, you have left my clients no alternative but to file a legal action seeking their full and total damages.

On that same day, a petition for damages for wrongful death was filed by the Hursts against Mr. Jenkins. Then, on August 10, 1993, the attorney hired by Northland to represent Mr. Jenkins wrote to the attorney for the Hursts. He said:

The purpose of this letter is to reiterate what Ms. Flentje stated in her June 1, 1993 letter and that is that Northland Insurance Company was then and is now ready, willing and able to pay its policy limits of $25,000 in settlement of the claim for the death of Gary V. Hurst, Sr. This offer has been open since June 1, 1993 and known to you since June 9, 1993. It will continue to remain open.

The case proceeded to trial on September 28, 1994. At the close of the evidence, the court directed a verdict in favor of the Hursts on the issue of liability. The jury then returned a verdict in the amount of $850,000 against Mr. Jenkins. The ensuing judgment issued by the trial court included an award of prejudgment interest pursuant to § 408.040.2. In its judgment, the court noted that the Hursts had "made a written demand upon Defendant and his insurance company to settle their claims for the policy limits of $25,000

and said letter was sent by certified mail, return receipt requested as required by said statute." The court granted the Hursts $90,-123.35 in prejudgment interest, from which Mr. Jenkins appeals.

## I.

■ In his first point on appeal, Mr. Jenkins argues that the trial court erred in awarding prejudgment interest because the Hursts' letter of May 27, 1993 was not a proper demand as required by § 408.040. Mr. Jenkins contends that the May 27, 1993 letter was more in the nature of a solicitation of an offer, and that it did not constitute a "demand" in the context of § 408.040 because it was conditioned upon the occurrence of events other than the payment of money.

Although Mr. Jenkins argues that the Hursts' May 27, 1993 letter did not constitute a demand for the purposes of § 408.040, Mr. Jenkins' answer to the Hursts' petition for wrongful death establishes otherwise. Paragraph 22 of the Hursts' petition stated:

Pursuant to Missouri law and, specifically, Missouri Revised Statute 408.040, Plaintiffs pray for pre-judgment and post-judgment interest. (See "Exhibit D" attached hereto and incorporated by reference.) Plaintiffs made a demand to settle this claim set forth herein for Defendant's policy limits which was represented to be $25,000. That offer was left open for 60 days. Defendant and/or his insurance company, Northland Insurance Company, failed to settle this case and/or to pay the policy limits of $25,000 timely or otherwise. As of this date, no settlement has been reached between the parties. Plaintiffs pray for pre-judgment interest to be determined after the judgment is rendered in this case.

In Mr. Jenkins' answer to paragraph 22, he stated:

That the first sentence of paragraph 22 is a prayer for relief and defendant denies that plaintiffs are entitled to such relief; that defendant states that the incorporation of "Exhibit D" is violative of Rules 55.05, 55.11 and 55.27, Mo.R.Civ.P., and moves that it be stricken pursuant to Rule

55.27; that defendant admits that by letter dated May 27, 1993, plaintiffs' attorney made demand for settlement of the claim for the death of Gary V. Hurst, Sr. for the policy limits of $25,000.00 and that said offer of settlement, by virtue of its terms, remained open for sixty days; that defendant states that such offer was accepted by letter dated June 1, 1993, to plaintiffs' attorney; that defendant admits that by letter dated May 27, 1993 that plaintiffs' attorney made demand for settlement of the personal injury claims of plaintiffs Tina Marie Hurst, Gary V. Hurst, Jr. and Matthew G. Hurst for remaining policy limits of $25,000.00 and that said offer of settlement remained open for sixty days; that defendant states that plaintiffs' attorney failed to provide, as requested, any information or records concerning the nature of such claims so that they could be properly evaluated by defendant and, therefore, plaintiffs have waived their right to and are estopped from asserting any claim for prejudgment interest based upon the demand of May 27, 1993; that defendant denies every other allegation contained in paragraph 22 not admitted herein.

■ When a party admits, in its answer, that allegations in a petition are true, the party makes a judicial admission as to that issue. *In re Marriage of Maupin*, 829 S.W.2d 125, 127 (Mo.App.1992). "A judicial admission 'waives or dispenses with the production of evidence and concedes for the purpose of the litigation that a certain proposition is true.'" *Id.* (quoting *Hewitt v. Masters*, 406 S.W.2d 60, 64 (Mo.1966)). Mr. Jenkins admitted in his answer that the Hursts made a demand for the policy limits of $25,000 and that the demand remained open for sixty days. The record establishes that the letter was sent by certified mail and was in written form. Therefore, there is no merit to Mr. Jenkins' contention that the letter did not constitute a "demand" as contemplated under § 408.040. Point denied.

## II.

In his second point on appeal, Mr. Jenkins contends that the trial court erred in awarding prejudgment interest under § 408.040 because, even if the Hursts made a sufficient settlement demand upon Mr. Jenkins, Northland complied with the settlement demand by offering to pay the $25,000 policy limit for the death of Gary Hurst, Sr. According to Mr. Jenkins, that action prevented the triggering of prejudgment interest under the statute.

■ In construing a statute, the primary rule is to ascertain the legislative intent from the words used, considering the words in their plain and ordinary meaning. *Welch v. Eastwind Care Center,* 890 S.W.2d 395, 397 (Mo.App.1995). Mr. Jenkins' contention is a misreading of the plain meaning of § 408.040.2, which states in pertinent part:

In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest … shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier.

■ Section 408.040.2 provides that a prevailing claimant is entitled to prejudgment interest if (1) the claimant made a demand for payment or an offer of settlement, and this demand or offer was left open for sixty days; and (2) the amount of the later judgment exceeded that of the claimant's demand or offer of settlement. If these conditions are met, then the prevailing party shall be awarded prejudgment interest, and that interest begins to accrue sixty days after the demand or offer of settlement was made, or before this sixty-day period elapsed if the demand or offer was rejected without a counter offer.

The plain meaning of these statutory provisions is that, unless the parties conclude a settlement within the sixty-day period after the demand is made, the response of the other party to the demand or offer of settle-

ment is irrelevant except to determine the date on which the prejudgment interest begins to accrue. *See Larabee v. Washington,* 793 S.W.2d 357, 361 (Mo.App.1990) (interest begins to run when demand is rejected without counter offer or at end of sixty-day period if no settlement is concluded within that period, whichever occurs first). Obviously, no such settlement was concluded in the case at bar during the sixty-day period and, in fact, the case proceeded to judgment after a jury trial. Furthermore, the amount awarded to the Hursts in the judgment was greater than the Hursts' May 27, 1993 demand for the amount of the policy limits. Therefore, Mr. Jenkins' response to the Hursts' May 27, 1993 demand was only relevant to determine the date on which the prejudgment interest began to accrue.

In its judgment, the trial court calculated the prejudgment interest to commence sixty days after the Hursts' May 27, 1993 demand for the amount of the policy limits. The award of prejudgment interest was consistent with the provisions of § 408.040.2, and was not erroneous. Point denied.

The judgment of the trial court is affirmed.

All concur.