**Ronald Joe HAYES, et ux., Appellants,**

v.

**Trisha G. PRICE, Respondent.**

No. SC 90054.

Supreme Court of Missouri,
En Banc.

May 25, 2010.

Rehearing Denied June 29, 2010.

David W. Ransin P.C., Springfield, for Appellants.

John Mullen and Nikki Cannezzaro, Franke, Schultz & Mullen P.C., Kansas City, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

Ronald Joe Hayes appeals from a judgment in his favor against Trisha G. Price for injuries he suffered when his motorcycle collided with her automobile. The collision occurred at an intersection when Ms. Price made a left-hand turn across the lane in which Mr. Hayes was traveling straight. On appeal, Mr. Hayes asserts that the trial court erred in submitting to the jury a comparative fault instruction for his "failure to keep a careful lookout" because Ms. Price failed to present evidence to support the submission. He also contends that the trial court erred by not awarding him prejudgment interest when he complied with the statutory require-ments. Because Ms. Price did not present evidence that Mr. Hayes was able to take evasive measures to avoid the accident, the trial court erred in submitting the comparative fault instruction. The trial court did not err in denying Mr. Hayes's request for prejudgment interest; his offer of settlement did not comply with section 408.040.2[1] because it included a demand for production of documents and statements from third parties. The trial court's judgment is reversed, in part, and affirmed, in part, as modified.

**Factual and Procedural Background**

The pertinent facts are viewed in the light most favorable to the jury's verdict. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456–57 (Mo. banc 2006). On September 25, 2004, Mr. Hayes was driving his motorcycle in Joplin with his friend and frequent motorcycling companion, Greg Cook. It was a clear, sunny day. Mr. Hayes and Mr. Cook were traveling southbound on Maiden Lane, a four-lane road that does not have a turn lane. As they approached the intersection of Maiden Lane and 13th Street, Mr. Cook was riding in the lead position in the left side of the curb-side lane. Mr. Hayes's motorcycle was staggered behind Mr. Cook's motorcycle in the right side of the curb-side lane. As they approached the intersection, a Ford Bronco was in the left lane of southbound Maiden Lane, waiting to turn left to go east on 13th Street.

Meanwhile, Ms. Price was traveling north on Maiden Lane. She saw the two southbound motorcycles as they approached 13th Street. At the intersection, she stopped in the left lane, intending to turn left to go west on 13th Street. The southbound Bronco created a "blind zone," blocking Ms. Price's view of Mr. Hayes

1. All statutory references are to RSMo 2000 unless otherwise indicated.

and Mr. Hayes's view of Ms. Price. Mr. Cook, the lead rider, observed that Ms. Price was beginning to turn in front of him, so he signaled to her as he passed through the intersection in an effort to alert her that another motorcycle was following behind him. Although Ms. Price saw Mr. Cook's signal, she misconstrued his warning gesture. She stopped her vehicle to let him go through the intersection and then resumed her turn. As she turned, she drove into the left side of Mr. Hayes's motorcycle. Mr. Hayes suffered severe injuries to his hip and leg from the collision.

At the time of the collision, both Mr. Hayes and Ms. Price had a green light. Mr. Hayes had the right-of-way, however, because he was proceeding straight through the intersection on the green light, whereas Ms. Price was turning left. Mr. Hayes was traveling at approximately 30 miles per hour in a 35 miles per hour zone. Mr. Hayes testified that as he approached the intersection, he was focused on a car stopped on 13th Street because he was concerned the car was going to make a right turn onto Maiden Lane in front of him. Mr. Hayes did not see Ms. Price until just before impact.

Before filing a lawsuit, Mr. Hayes sent Ms. Price a demand letter, pursuant to section 408.040.2, for the purpose of qualifying for prejudgment interest. Mr. Hayes offered to release Ms. Price from any liability if she paid him $325,000 and produced a number of documents and sworn witness statements from herself and her parents. The demand letter was sent by certified mail and the offer kept open for 60 days. Ms. Price did not accept the offer. Mr. Hayes filed suit, and the case went to trial on February 14, 2006.

Mr. Hayes submitted his case to the jury on the theory that Ms. Price was negligent for failure to yield. Ms. Price submitted a comparative fault instruction, failure to keep a careful lookout under MAI 17.05, to which Mr. Hayes objected. Mr. Hayes also moved to exclude any matter regarding comparative fault. The trial court overruled his motion and allowed Ms. Price to submit the comparative fault instruction to the jury.

The jury returned a verdict in favor of Mr. Hayes in the amount of $625,000 and apportioned 20 percent of the fault to Mr. Hayes and 80 percent of the fault to Ms. Price. The jury found in favor of Ms. Price on Mr. Hayes's loss of consortium claim. As a result of the apportionment of 20 percent of the fault to Mr. Hayes, the trial court reduced Mr. Hayes's damages award by $125,000. The trial court overruled Mr. Hayes's motion for prejudgment interest.[2]

Mr. Hayes appeals. First, he claims that the trial court erred in submitting the comparative fault instruction to the jury because Ms. Price failed to present evidence to support the instruction's submission. Second, he contends that the trial court erred by not awarding him prejudgment interest because he complied with the requirements of section 408.040.2. After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

### Submission of Comparative Fault Jury Instruction

Mr. Hayes first claims that the trial court erred in submitting jury instruction No. 10, a comparative fault instruction for failure to keep a careful lookout based on

**2.** Mr. Hayes filed a motion nunc pro tunc to amend the judgment to reflect the trial court's denial of prejudgment interest. The trial court sustained the motion and modified the judgment on May 2, 2006.

MAI 17.05. He asserts that there was no substantial evidence to support submission of the instruction to the jury.

 Whether a jury was properly instructed is a question of law this Court reviews de novo. *Bach v. Winfield–Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). This Court reviews the record in the light most favorable to submission of the instruction. *Id.* Any issue submitted to the jury in an instruction must be supported by substantial evidence "from which the jury could reasonably find such issue." *Kauzlarich v. Atchison, Topeka, & Santa Fe Ry. Co.*, 910 S.W.2d 254, 258 (Mo. banc 1995). "Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case." *Powderly v. S. County Anesthesia Assocs. Ltd.*, 245 S.W.3d 267, 276 (Mo.App.2008). If the instruction is not supported by substantial evidence, there is instructional error, which warrants reversal "only if the error resulted in prejudice that materially affects the merits of the action." *Bach*, 257 S.W.3d at 608.

 In this case, the trial court submitted to the jury a "failure to keep a careful lookout" comparative fault instruction. The essence of the "failure to keep a careful lookout" claim is a failure to see and a failure to act. *Lovelace v. Reed*, 486 S.W.2d 417, 418–19 (Mo.1972).

> Alleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that, in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle ... in time thereafter to have taken effective precautionary action.

*Heberer v. Duncan*, 449 S.W.2d 561, 563 (Mo. banc 1970). The inquiry is two-fold:

if the driver was keeping a careful lookout, could the driver have seen the danger; and, if the driver could have seen the danger, did the driver have the ability to take some precautionary measure such as veering, utilizing a horn, or slowing speed to prevent the accident? The evidence must support a finding that a driver had the means and ability to have avoided a collision. *Thurman v. Anderson*, 693 S.W.2d 806, 807 (Mo. banc 1985). "Means and ability include sufficient time and distance considering the movement and speed of the vehicles." *Id.*

Ms. Price argues, in support of the trial court's submission of Mr. Hayes's comparative fault, that if Mr. Hayes had been keeping a careful lookout, he would have seen impending danger and he could have slowed down or taken some action to avoid the collision. Viewing the record in the light most favorable to submission of the instruction, the evidence was that Mr. Hayes had the ability to observe Ms. Price's vehicle approach the intersection, before her vehicle was hidden in the cone-shaped blind zone created by the Bronco. Even if Ms. Price had her turn signal activated at this time, however, Mr. Hayes had a green light and the right of way as he approached the intersection, and he was justified in assuming that Ms. Price would yield to oncoming traffic until she "gave positive indication to the contrary." *See id.* at 808. Prior to entering the blind zone, there was no evidence that Mr. Hayes had information to alert him that he should not proceed through the intersection at his speed of 30 miles per hour.

 The evidence was that, as Mr. Hayes and Ms. Price neared the intersection from opposite directions, the Bronco in the left lane on southbound Maiden Lane created a blind zone, obstructing the view of both Mr. Hayes and Ms. Price.[3]

---

3. Accident reconstructionist Robert McKinzie testified that the Bronco had windows and

Ms. Price initially stopped at the intersection. She began to turn only after Mr. Hayes's view was obstructed by the Bronco. There is no evidence that at the point that Mr. Hayes exited the blind zone, when he would have seen Ms. Price making a turn if he had been keeping a careful lookout, there was sufficient time for beeping, swerving, or decelerating that would have prevented the collision. Mr. Hayes was traveling at approximately 30 miles per hour, five miles less than the speed limit, which is a pace of approximately 1.5 feet per second. Ronald McKinzie, an accident reconstruction expert, testified that there were two seconds, approximately 88 feet, between Mr. Hayes exiting the blind zone and the collision. The average reaction time of 1.5 seconds would not have given Mr. Hayes sufficient time to react and avoid the collision once he left the blind zone.

Ms. Price argues that if Mr. Hayes had been keeping a careful lookout while he was still in the blind zone, the actions of his motorcycle companion, Mr. Cook, would have put him on notice of impending danger in the intersection at a point that he had sufficient time to react and avoid the collision. Mr. Cook testified that he

saw Ms. Price starting her turn across the southbound lanes of the intersection. He waved to get her attention because he believed she was going to pull out in front of him. He then signaled to her that another motorcycle was behind him by holding up two fingers. Ms. Price asserts that if Mr. Hayes had been keeping a careful lookout, he would have seen Mr. Cook's gesture, putting him on notice of something dangerous or something to cause concern in the upcoming intersection.

Mr. McKinzie testified that Mr. Hayes was up to 171 feet away when Mr. Cook gestured and Ms. Price began her turn. At his speed of 30 miles per hour, Mr. Hayes was 3.9 seconds away from impact at that time.[4] Giving Mr. Hayes the average reaction time of 1.5 seconds, he then would have had 2.4 seconds in which to take evasive action. Mr. McKinzie testified that, if Mr. Hayes's motorcycle was traveling at a speed of less than 30 miles per hour, there was an opportunity that Ms. Price could have avoided the collision. While Ms. Price did not see Mr. Hayes prior to the impact, the evidence reasonably would support a finding that, if Mr. Hayes had honked his horn and slowed,

was not completely opaque so, Ms. Price and Mr. Hayes were available to be seen by each other. But he stated that the glare was unknown, as well as the exact kind of vehicle blocking the view because the Bronco did not stop after the collision. Therefore, he could say only that "it is possible [Ms. Price's vehicle] was available to be seen." It was not enough that Mr. Hayes could have seen the presence of Ms. Price's vehicle in the intersection; he also had to see that she was beginning a turn. The testimony from Mr. McKinzie is too speculative to support a finding that Mr. Hayes could see the actions of Ms. Price's vehicle through the Bronco's windows. *See Hemeyer v. Wilson*, 59 S.W.3d 574, 581 (Mo. App.2001) (discussing what makes evidence speculative and thus lacking in probative value). Additionally, at trial, Ms. Price took the position that the Bronco blocked her view of

Mr. Hayes's motorcycle and his view of her vehicle. She may not take the contrary position on appeal that Mr. Hayes could have seen her vehicle stopped at the intersection through the Bronco if he had been keeping a careful lookout. *See State v. Broussard*, 57 S.W.3d 902, 913 (Mo.App.2001) (inconsistent theories at trial and on appeal make the error unpreserved).

4. There was evidence that Mr. Hayes was traveling one-half to one second behind Mr. Cook, which would have precluded him from taking any evasive action after Mr. Cook gestured. Because the evidence must be considered in the light most favorable to submission, that evidence is not considered. *Hemeyer*, 59 S.W.3d at 582.

Ms. Price would have been alerted to the danger and could have stopped her car before impact. At her speed of approximately 5 to 10 miles per hour, she needed only 12 feet of reaction time and 2 feet to stop.

The issue, then, is whether a motorcyclist exercising the highest degree of care reasonably would have seen Mr. Cook's gesture and perceived the gesture as a warning of a condition that required evasive action. Both Mr. Hayes and Mr. Cook testified that it is hard for people in cars to see motorcyclists. Mr. Hayes stated that a motorcyclist must be cognizant of everyone around the motorcyclist and drive defensively. Mr. Cook testified that it was part of his job, as the lead motorcyclist, to give warnings to the motorcyclist behind him if he encounters any sort of dangerous situation. Mr. Hayes recognized that the second motorcyclist has to look for such warnings from the lead motorcyclist.

With regard to the specific gesture made by Mr. Cook, Mr. Cook testified that as he passed through the intersection and saw Ms. Price beginning to pull out in front of him, he made eye contact with her, pointed back behind him, and pointed two fingers out. He testified that this gesture was a warning to Ms. Price that there was a second motorcycle coming and not a warning to Mr. Hayes. Mr. Hayes testified that such a gesture is sometimes a warning given to a driver of a vehicle in the intersection. There was no evidence that the type of gesture made by Mr. Cook was an indication of danger that Mr. Hayes should have seen and recognized as requiring evasive action.

As noted previously, this Court held in *Thurman v. Anderson* that a driver entering an intersection with the right of way is justified in assuming that cars going in the opposite direction will obey a traffic signal "at least until a driver gave positive indication to the contrary." 693 S.W.2d at 808. Likewise, a driver is entitled to assume a car going in the opposite direction will yield the right of way to oncoming traffic before turning, until the driver gives a positive indication to the contrary. Such a driver has every right to proceed through an intersection even though there is a driver approaching; the only exception is if it should have been apparent that the other driver is not respecting the traffic law. *See id.* Mr. Hayes had the right to assume that Ms. Price would yield to oncoming traffic until he was reasonably aware that she was not doing so, and until he was so aware, he was not required to take evasive action like slackening his speed or sounding his horn. Ms. Price failed to present substantial evidence to support the submission of Mr. Hayes's comparative fault because there was no evidence that a reasonable driver could or should have seen any indication of a danger at a time that would allow him to have the means and ability to use an evasive action to avoid the collision.

Because the failure to keep a careful lookout instruction was not supported by substantial evidence, the instruction was improperly submitted to the jury. The improper submission is prejudicial because Mr. Hayes was assessed a percentage of comparative fault for the accident as a result of the erroneous instruction, and his damages were reduced by that percentage. The portion of the trial court's judgment accessing 20 percent of the fault to Mr. Hayes is reversed.

### Prejudgment Interest under Section 408.040.2

Mr. Hayes also contends that the trial court erred by refusing to award him prejudgment interest pursuant to section

408.040.2.[5] He argues that he fully complied with the statutory requirements and, therefore, he is entitled to prejudgment interest as a matter of law. He asserts that the language of section 408.040.2 allows a person to make an unambiguous demand that may or may not include the production of other information and documents by the defendant.

■ The crux of Mr. Hayes's claim of error involves statutory interpretation. Interpretation of a statute is a matter of law, which this Court reviews de novo. *Smith v. Shaw,* 159 S.W.3d 830, 833 (Mo. banc 2005). The statute at issue, section 408.040.2, authorizes a court to grant prejudgment interest if a party meets the requirements in the statute. This Court construed the provisions of the prejudgment interest statute in *Brown v. Donham,* and its analysis is helpful in resolving the issue raised in this case. 900 S.W.2d 630 (Mo. banc 1995).

Section 408.040.2 states:

In tort actions, if a claimant has made demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier. Nothing contained herein shall limit the right of a claimant, in actions other than tort actions, to

recover prejudgment interest as otherwise provided by law or contract.

This statute allows a plaintiff to recover prejudgment interest if the plaintiff makes a demand for payment or offer of settlement to the opposing party and any subsequent judgment in the case exceeds the amount specified in the demand or offer of settlement. *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 448 (Mo. banc 1998).

■ For a party to receive prejudgment interest, the settlement demand must be proper. *Werremeyer v. K.C. Auto Salvage Co.,* 134 S.W.3d 633, 636 (Mo. banc 2004). A proper demand must be definite in terms. *Brown,* 900 S.W.2d at 633. Analogous to an offer in a contract, a demand "must be so definite in its terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." *Id.* (internal citations omitted). Additionally, the amount of settlement demanded must be readily ascertainable in dollars and cents. *Id.* When the requirements of section 408.040.2 are met, a trial court has no discretion and must grant prejudgment interest. *McCormack v. Capital Electric Const. Co.,* 159 S.W.3d 387, 402 (Mo.App.2004).

The relevant parts of Mr. Hayes's demand letter state:

I have been authorized by my client, Ronald Hayes, to settle his claim against your clients by the delivery of copies of the titles to all vehicles owned or driven by, or available for the use of Patrick, Gaylia, or Trisha Price on September 25, 2004, certified copies of all indemnity agreements in any form from any source whatsoever, all applicable liability insurance coverages, including declaration

---

5. All citations to section 408.040 are to RSMo 2000. Although the Missouri General Assembly amended Section 408.040 in 2005, the version in RSMo 2000 is the version applicable to this appeal and analyzed in this opinion.

pages, primary, excess, or otherwise, issued on those vehicles, or to or for the benefit of, or on behalf of Patrick, Gaylia, or Trisha Price or any other named insured, which insure or stand to indemnify any of them for any of their potential liability arising in any fashion from the collision in this matter and to compensate the damages claimed by Ronald Hayes, a sworn statement of Patrick, Gaylia, and Trisha Price taken in person by me at my cost, and recorded and transcribed by a court reporter, in addition to the payment of $325,000.00, and reimbursement of all court costs, payable in cash or its equivalent, and all of which must be delivered to my office within 10 days of acceptance, in exchange for a R.S.Mo. § 537.060 release. . . .

Acceptance of this offer may be made only in writing expressly agreeing to the terms in this letter and release, and requires the actual delivery of the above items and statements, and the full payment of the above demanded amount.[6]

Ms. Price did not accept this offer of settlement. After the verdict, Mr. Hayes filed a motion requesting prejudgment interest. Ms. Price opposed the motion on the ground that Mr. Hayes's offer of settlement demanded the participation of her parents, Patrick and Gaylia Price, who were not parties to the action, in order to reach a settlement. She argued that the demand for performance by these nonparties rendered any resulting contract unenforceable. The trial court overruled Mr. Hayes's motion.

 The parties agreed that Mr. Hayes's offer of settlement included a demand for a monetary amount that is readily ascertainable, the sum of $325,000. In addition to his demand for $325,000, Mr. Hayes included four non-monetary demands. He demanded copies of titles to cars owned or driven by Ms. Price and her parents, certified copies of all indemnity agreements "in any form from any source," all applicable liability insurance policies, and sworn statements of Ms. Price and each of her parents taken in person by Mr. Hayes's attorney. His offer of settlement also expressly conditioned acceptance on "actual delivery" of all of the "above items and statements." Ms. Price could not settle unless she provided all of these items in addition to the $325,000 payment.

 There is no language in section 408.040.2 that permits or prohibits nonmonetary demands in addition to a demand for a monetary amount that is readily ascertainable. Therefore, it is necessary to examine the statute's language to determine if a proper offer of settlement can include additional non-monetary demands. In interpreting statutes, this Court ascertains the intent of the legislature from the plain and ordinary language used and, if possible, gives effect to that intent. *Smith*, 159 S.W.3d at 834. "In determining legislative intent, statutory words and phrases are taken in their ordinary and usual sense." *Id.* This Court may also "review the earlier versions of the law, or examine the whole act . . ., or consider the problem that the statute was enacted to remedy" to discern legislative intent. State ex rel. *Unnerstall v. Berkemeyer*, 298 S.W.3d 513, 519 (Mo. banc 2009) (internal citations omitted).

The language of section 408.040.2 states that if a claimant in a tort action has made "a demand for payment of a claim" or "an

6. Mr. Hayes's demand letter complied with the timing requirements and delivery requirements imposed by the statute.

offer of settlement of a claim ... and the amount of the judgment or order exceeds the demand for payment or offer to settle, prejudgment interest ... shall be calculated." This language speaks to the necessity for a demand amount that is a readily ascertainable monetary amount. While the phrase "offer of settlement" is broader than the phrase "demand of payment" and arguably could include non-monetary demands, the context of both phrases makes it clear that the legislature intended that the offer be "capable of ascertainment in a certain dollars and cents amount." *Brown*, 900 S.W.2d at 633. It is necessary that the offer be ascertainable in a certain dollar and cents amount because the offer must be in a form that can be compared with the actual judgment amount. It is the comparison of the two amounts that triggers the right to prejudgment interest.[7] *Id.* By their nature, non-monetary demands cannot be compared with the actual judgment amount to determine if prejudgment interest should be awarded.

Additionally, to allow a party to make non-monetary demands beyond the monetary demand for settlement in a section 408.040.2 offer would be contrary to the public policies served by the statute. Section 408.040.2 "serves two public policies." *Brown*, 900 S.W.2d at 633. "First, it compensates claimant for the true cost of money damages they have incurred due to the delay of litigation. Second, where liability and damages are fairly certain, it promotes settlement and deters unfair benefit from the delay of litigation." *Id.* The statute encourages a defendant to buy peace in the form of a monetary settlement.

A non-monetary demand in an offer of settlement has no relationship to compensating a claimant for the true cost of money damages the claimant incurred due to the delay of litigation. Nor does a demand unrelated to ascertaining the amount of the demand in dollars and cents promote settlement and deter unfair benefit from the delay of litigation. While there possibly may be some offer of settlement with non-monetary conditions that do not impede settlement or frustrate the purpose of section 408.040.2, that is not this case. Here, by including demands for indemnity agreements, titles, and sworn statements in his offer of settlement, Mr. Hayes obstructed Ms. Price's ability to unequivocally accept because to accept the offer, Ms. Price needed the cooperation of third parties. Mr. Hayes's offer of settlement would not allow Ms. Price to accept the offer, settling his claim, unless Ms. Price could obtain her parents' cooperation to comply with his demands. Mr. Hayes's offer of settlement made it impossible for Ms. Price, alone, to accept. The effect of his offer of settlement impeded settlement and frustrated section 408.040.2's purpose of encouraging settlement.[8]

---

7. An example of a demand that is not "expressed in dollars and cents," but which is "capable of ascertainment in a certain dollars and cents amount" might be a demand for "policy limits." *Brown*, 900 S.W.2d at 633 n. 3.

8. In support of his argument that he is entitled to prejudgment interest, Mr. Hayes cites *Hurst v. Jenkins,* a case in which a defendant claimed that a demand for documentation and statements similar to those requested by Mr. Hayes did not constitute a demand under section 408.040.2. 908 S.W.2d 783 (Mo.App. 1995). In *Hurst,* the court of appeals upheld an award of prejudgment interest, but the basis for the court's decision was not that such a demand was authorized by section 408.040.2. *Id.* at 785–86. The Court never reached that issue. *Id.* The court of appeals affirmed the award of prejudgment interest because the party challenging the award judicially admitted in its answer that a demand was made under section 408.040.2. *Id.* Hurst does not aid Mr. Hayes.

Because Mr. Hayes's offer of settlement included a demand for document production and statements of third persons, the offer of settlement was not capable of ascertainment in a certain dollar and cents amount and impeded settlement and did not meet the requirements of section 408.040.2. Therefore, the trial court did not err in denying the request for prejudgment interest.

## Conclusion

The trial court erred in submitting the comparative fault instruction and that error was prejudicial to Mr. Hayes. The trial court did not err in denying Mr. Hayes's request for prejudgment interest, and that portion of the judgment is affirmed. Rule 84.14 authorizes an appellate court to modify the judgment by eliminating the reduction in damages due to erroneous assessment of comparative fault to Mr. Hayes. *Robinson v. Weinstein*, 856 S.W.2d 337, 338 (Mo.App.1993). The trial court's judgment accessing 20 percent of the fault to Mr. Hayes is reversed. Judgment is entered to reflect that Ms. Price is 100 percent at fault and that Mr. Hayes's damage award is $625,000, the full amount assessed by the jury. In all other respects, the trial court's judgment is affirmed.

All Concur.