

## SUPREME COURT OF MISSOURI
### en banc

CARRIE S. SCHULTZ AND ROBERT )      *Opinion issued February 11, 2025*
C. SCHULTZ, SR., SURVIVING )
PARENTS OF ROBERT C. SCHULTZ, )
JR., DECEASED, )
            )
            Respondents, )         No. SC100582
            )
v. )
            )
GREAT PLAINS TRUCKING, INC. AND )
LENNIS H. BECK, )
            )
            Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
**The Honorable W. Christopher McDonough, Judge**

Great Plains Trucking Inc. and Lennis H. Beck (collectively "defendants") appeal

the circuit court's judgment, entered after a jury trial, in favor of Carrie S. Schultz

("mother") and Robert C. Schultz, Sr. (collectively "plaintiffs"), surviving parents of

Robert C. Schultz, Jr. ("son"), in plaintiffs' wrongful death action. Because the record

establishes defendants either did not preserve their claims of error for appellate review or

their preserved claims fail on the merits, this Court affirms the circuit court's judgment.

### Factual Background and Procedural History

Great Plains had employed Beck as an over-the-road truck driver since 2009.

Beck had a commercial driver license ("CDL") and had to comply with the Missouri

CDL manual. At about midnight August 6, 2019, Beck left a Great Plains facility in Salina, Kansas, driving a Great Plains tractor-trailer truck weighing about 50,000 pounds toward Jefferson, Georgia. Beck had made the same trip once a week for six months prior to August 2019. Nearing 6 a.m., Beck encountered light traffic in the dark and rain in Wentzville, Missouri. Around this same time, mother drove herself and son in another vehicle, as they were scheduled to work a 6 a.m. shift. Mother's vehicle fishtailed from the right lane to the left lane, hitting the center median wall. A pickup truck hit mother's vehicle, which came to rest on the highway. Beck's truck then collided with mother's vehicle. Son died from injuries sustained in the collision.

Plaintiffs brought a wrongful death action against defendants for son's death. The jury returned verdicts awarding plaintiffs $10,000,000 in compensatory damages against defendants, $10,000,000 in aggravating circumstances damages against Great Plains, and $25,000 in aggravating circumstances damages against Beck. The circuit court entered its judgment for plaintiffs in accordance with the jury verdicts and awarded plaintiffs post-judgment interest. Defendants filed a post-trial motion requesting a new trial or judgment notwithstanding the verdict ("JNOV"), which the circuit court overruled. Defendants timely appealed.[1]

---

[1] This Court granted transfer after an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

**Point I – Defendants preserved no claim of error related to the exclusion of expert witness testimony**

In point I, defendants assert the circuit court abused its discretion in excluding expert testimony from a doctor who opined mother was impaired by delta-9-tetrahydrocannabinol ("THC") at the time of the collision. Defendants assert exclusion of this evidence prejudiced them because the doctor's opinions were critical to their defense that mother's impairment was the sole cause of the collision. Plaintiffs assert nothing is preserved for review because defendants did not object at trial to exclusion of the expert testimony. This Court agrees defendants failed to preserve this issue for appellate review.

Before trial, plaintiffs filed a motion to exclude the doctor's testimony,[2] which the circuit court sustained. Defendants deposed the doctor again and filed a motion to reconsider, attaching the new deposition transcript as an exhibit. On the morning of trial, before the venire panel was sworn, the circuit court held a hearing and overruled defendants' motion to reconsider the doctor's testimony.[3] Defense counsel and the circuit court had the following exchange:

---

[2] "A motion to exclude is equivalent to a motion in limine." *Rosales v. Benjamin Equestrian Ctr., LLC*, 597 S.W.3d 669, 685 (Mo. App. 2019). Here, by the motion to exclude, plaintiffs sought a pretrial ruling concerning exclusion of expert testimony, a preliminary evidentiary ruling subject to reconsideration and reversal during the trial. *See id.* at 686.

[3] The circuit court sustained plaintiffs' motions in limine related to evidence of mother's drug history and use before the collision. Defendants did not challenge those rulings at trial and raise no issue on appeal concerning those rulings.

[Counsel]: So my position would be I'd like to get a Judge ruling on the motion to reconsider --

THE COURT: Of course.

[Counsel]: -- but based on his ruling on seven and eight I'm not allowed to hope. But if the Judge maintains there's no evidence of that coming in I will not object as long as we can stipulate that my objection's preserved throughout the whole trial.

….

THE COURT: That seems reasonable.

At the same hearing, defense counsel indicated they intended to file a written offer of proof attaching the doctor's most recent deposition transcript. Defense counsel also asked to make a verbal offer of proof, which the circuit court allowed over plaintiffs' counsel's objection. For the verbal offer of proof, defense counsel stated they anticipated the doctor would testify consistently with the doctor's depositions and defense counsel's witness disclosure about the doctor. Defense counsel did not seek to introduce the doctor's deposition at the trial or raise any objection concerning exclusion of the doctor's testimony at the trial. On the last day of trial, defense counsel filed an offer of proof indicating the doctor "would testify at trial consistent with [the doctor's] witness disclosure" and "[a]s support for this offer of proof related to [the doctor's] anticipated trial testimony," defense counsel attached the doctor's most recent deposition transcript. While defense counsel filed this pleading, defense counsel did not bring the pleading to the circuit court's attention or otherwise attempt to introduce the doctor's deposition testimony at trial.

Defendants ask this Court to conclude their pretrial filings and the hearing the morning of trial, including their purported request for a continuing objection, all before swearing of the venire panel, sufficiently preserved for appeal their arguments about the doctor's excluded testimony. To do so would require this Court to disregard well-settled law about preservation of trial error for appellate review:

> A motion in limine, by itself, preserves nothing for appeal. To pursue a claim of evidentiary error on appeal, a party must do four things, two at the trial court and two on appeal. First, the party must raise the claimed error in a timely fashion, which means (when the claim is that the trial court improperly excluded evidence) that the proponent must offer the evidence at trial and make a detailed offer of proof concerning that evidence when the trial court orders that it be excluded. Second, the party must preserve that claim by including it in its motion for a new trial. Third, the party must present this claim in a proper point relied on in the appellate brief. Finally, the party must provide a sufficient argument on that point in the party's brief.

*Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 452 n.4 (Mo. banc 2014) (emphasis omitted) (internal quotation and citations omitted).

While this Court is sympathetic to the time constraints of trial and the necessity of making a record outside the jury's presence, a record made the morning of trial before the venire panel is sworn is not evidence offered at trial. *See Petersen v. State*, 658 S.W.3d 512, 515-16 (Mo. banc 2022) (finding a motion in limine filed and overruled the morning of trial amounted to a pretrial objection preserving nothing for appellate review). This is because "[a]n in limine ruling is a preliminary expression of the court's opinion as to the admissibility of evidence and is subject to change during the course of the trial." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 646 (Mo. banc 1997) (internal quotation omitted). "Where an objection has been sustained in a hearing on a motion in limine, an

5

offer of proof must be made at trial." *Id.* Requiring an offer of proof *at trial* serves the important dual purposes of allowing the circuit court to reconsider the pretrial, preliminary admissibility ruling in light of the evidence actually presented at trial and preserving the claim of error for appeal by making a clear record of the questions that would be asked at trial and the proposed answers so an appellate court may consider the same in determining whether the circuit court's ruling was proper. *Id.* at 646-47.

Defendants preserved nothing for appellate review concerning the doctor's excluded testimony when they did not attempt to call the doctor to testify at trial, did not make a specific offer of proof at trial, and did not renew at trial their objection to the excluded testimony. Filing a written offer of proof on the last day of trial likewise preserved nothing for appellate review because defendants did not reference this filing on the record at trial to give the circuit court an opportunity to reconsider the earlier ruling.

Even if this Court were to excuse the manner in which defendants made their offer of proof, the offer itself was insufficient to preserve anything for appellate review. The offer simply referenced defendants' witness disclosure and attached the doctor's most recent deposition transcript as an exhibit. "An offer of proof must demonstrate the relevancy of the testimony offered, must be specific, and must be definite." *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983). In the summary judgment context, this Court has held: "These summary judgment principles do not require the circuit court or any appellate court to sift through the entire record to identify disputed issues, which, in turn, would cause a court to impermissibly act as an advocate for a party." *Green v. Fotoohighiam*, 606 S.W.3d 113, 118 (Mo. banc 2020).

6

Similarly, here, the offer of proof requirements do not require the circuit court or an appellate court to sift through the court filings to determine an offer of proof has been filed, to address the filing *sua sponte*, or to review an entire deposition transcript to determine what, if any, testimony might have been admissible if offered at trial or through a proper offer of proof. *See also Reed v. Kan. City Mo. Sch. Dist.*, 504 S.W.3d 235, 242 (Mo. App. 2016) (concluding plaintiff preserved nothing for appellate review when the circuit court sustained a motion in limine seeking to exclude witness testimony when "[plaintiff] never made an offer of proof at trial; she simply submitted a full copy of [witness's] deposition transcript without reference to any portion that would warrant the admission of her testimony"). Because defendants preserved nothing for appellate review in point I, point I is denied.[4]

**Point II – Defendants preserved no claim of error related to joint participation by separate counsel**

In point II, defendants contend the circuit court abused its discretion in overruling defendants' objections to plaintiffs' separate counsel participating "in all stages of the jury trial." Plaintiffs, parents of son, are not married and hired separate counsel in the action. Contrary to defendants' argument on appeal, they never objected at trial to separate counsel participating "in all stages of the jury trial." Instead, defendants filed a

---

[4] Pursuant to Rule 84.13(c), "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Defendants do not request plain error review and have not alleged or proven manifest injustice or miscarriage of justice. All rule references are to Missouri Court Rules (2022).

pretrial motion titled "Motion to Limit Questioning to One Attorney," in which they argued separate counsel "are not allowed to each question a witness" and it is "within the Court's discretion to limit the examination of each witness to one attorney[.]" The circuit court overruled the motion. In their motion for new trial, defendants asserted for the first time the circuit court abused its discretion in permitting separate counsel to participate in voir dire, question witnesses and parties, and present opening statements and closing arguments. Defendants raised no timely, specific objection at trial concerning participation by separate counsel in all stages of the jury trial. While Rule 78.07(a) requires allegations of error to be raised in a motion for a new trial in a jury-tried case, a motion for a new trial including alleged errors not raised at trial preserves nothing for appellate review. "It is well recognized that a party should not be entitled on appeal to claim error on the part of the [circuit] court when the party did not call attention to the error at trial and did not give the court the opportunity to rule on the question." *In re E.G.*, 683 S.W.3d 261, 266 (Mo. banc 2024) (alteration in original) (internal quotation omitted). Because defendants preserved nothing for review in point II, point II is denied.[5]

---

[5] As in point I, defendants do not request plain error review of this issue and have not alleged or proven manifest injustice or miscarriage of justice.

**Point III – Substantial evidence supported submission of Instruction 7 on failure to keep a careful lookout**

In point III, defendants claim the circuit court erred in giving Instruction 7 because the failure to keep a careful lookout part of the instruction was not supported by substantial evidence.

**Standard of Review**

"[W]hether the jury was properly instructed is a question of law that is reviewed *de novo*." *Chavez v. Cedar Fair, LP*, 450 S.W.3d 291, 294 (Mo. banc 2014). "Review is conducted in the light most favorable to the instruction's submission." *Williams v. Mercy Clinic Springfield Cmtys.*, 568 S.W.3d 396, 413 (Mo. banc 2019). "If any theory supports the instruction's submission, its submission is proper." *Id.* "Any issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue." *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010) (internal quotation omitted). "Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case." *Id.* (internal quotation omitted). "If the instruction is not supported by substantial evidence, there is instructional error, which warrants reversal only if the error resulted in prejudice that materially affects the merits of the action." *Id.* (internal quotation omitted).

**Analysis**

Instruction 7 stated in relevant part:

Your verdict must be for [plaintiffs] against [defendants], if you believe:

First, either:

9

[Beck] failed to keep a careful lookout, or

[Beck] drove at an excessive speed, or

[Beck] drove at a speed which made it impossible for [Beck] to stop within the range of [Beck's] visibility[.]

"The essence of the 'failure to keep a careful lookout' claim is a failure to see and a failure to act." *Id.*

Alleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that, in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle ... in time thereafter to have taken effective precautionary action.

*Id.* (alteration in original) (internal quotation omitted).

Furthermore,

The obligation of a driver to maintain a careful lookout imposes the continuous and inescapable duty to maintain a vigilant lookout ahead and laterally ... in such observant manner as to enable him to see what one in the exercise of the highest degree of care for the safety of himself and others could and should have seen under similar circumstances.

*Foster v. Farmers Ins. Co.*, 775 S.W.2d 143, 144 (Mo. banc 1989) (alteration in original) (internal quotation omitted). "The driver is also under a duty to take effective precautionary action when a person, in the exercise of the highest degree of care, would have reason to anticipate danger." *Id.* (internal quotation omitted). "If reasonable minds could differ as to when a driver knew or could have known of a reasonable likelihood of collision, the question of when the duty arises to take evasive action is for the jury." *McHaffie ex rel. McHaffie v. Bunch*, 891 S.W.2d 822, 828 (Mo. banc 1995).

10

Defendants argue there was no evidence Beck failed to keep a careful lookout because the slowing traffic was in the adjacent traffic lane rather than directly in front of him. Defendants' argument ignores that Missouri law requires "a vigilant lookout ahead and laterally" and imposes "a duty to take effective precautionary action when a person, in the exercise of the highest degree of care, would have reason to anticipate danger." *Foster*, 775 S.W.2d at 144.

Viewing the evidence in the light most favorable to the verdict, the circuit court did not err in concluding there was substantial evidence to support submission of Instruction 7. Beck switched from the right lane to the left lane to avoid slowing traffic in the right lane and drove through the curve in the left lane with his cruise control set at 70 mph despite the dark, rainy conditions and traffic slowing in the right lane. Beck ignored the posted 65 mph speed limit sign a mile from the collision site and the flashing yellow light and 60 mph speed limit sign about one-half mile from the collision site warning about the curve ahead. Plaintiffs' trucking safety expert testified speed limits for curves are mandatory for professional tractor-trailer truck drivers. Plaintiffs' expert further testified a professional tractor-trailer truck driver must adjust the truck's speed to go with the flow of traffic in the adjacent lane because slowing traffic in the adjacent lane could signal a crash, a disabled vehicle, or some other hazard. Plaintiffs' accident reconstructionist expert testified that, had Beck reduced his speed to the posted speed limit of 60 mph, Beck would have avoided impact with mother's vehicle. Under these circumstances, there was substantial evidence from which the jury reasonably could have found Beck failed to keep a careful lookout. Point III is denied.

11

**Points IV and V – Sufficient evidence supported the jury's award of aggravating circumstances damages against Beck and Great Plains**

In points IV and V, defendants assert there was not sufficient evidence to support the jury's award of aggravating circumstances damages against them.

**Standard of Review**

Whether there is sufficient evidence to support an award of punitive damages or aggravating circumstances damages is a question of law this Court reviews *de novo*. *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 477 (Mo. banc 2021). "In determining whether a claim is submissible, this Court views the evidence and all reasonable inferences therefrom in the light most favorable to the jury's verdict." *Id.* All adverse evidence and inferences are disregarded. *Id.* "Only evidence that tends to support the submission should be considered." *Id.* (internal quotation omitted).

**Analysis**

"To support a claim for aggravating circumstances damages or for punitive damages, the plaintiff must present clear and convincing evidence at trial to support the claim." *Dodson v. Ferrara*, 491 S.W.3d 542, 562-63 (Mo. banc 2016), *as modified* (May 24, 2016). Punitive damages or aggravating circumstances damages are imposed for punishment and deterrence. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. banc 1996). "[D]amages for aggravating circumstances are not generally recoverable in negligence actions because negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional conduct." *Dodson*, 491 S.W.3d at 563 (internal quotation omitted). "Nonetheless, both Missouri Approved Instruction (MAI) 10.02 and

12

MAI 10.07 provide that punitive damages may be awarded for a negligent act or omission if the jury finds that the conduct of the defendant 'showed complete indifference to or conscious disregard for the safety of others.'" *Id.* (quoting MAIs 10.02 and 10.07). "MAI 6.02 states that the same showing is necessary for an award of aggravating circumstances damages in a wrongful death case when the theory of liability is negligence." *Id.*

Viewing the evidence in the light most favorable to the verdict, the circuit court did not err in concluding plaintiffs made a submissible case for aggravating circumstances damages against both defendants. At trial, Beck testified he was a "very experienced truck driver" who had been a professional truck driver for about 17 years. He was "very familiar" with the roadway where the collision occurred. He had driven that route "many, many times." He knew he could not see through the curve, and this would be a reason to reduce his speed. Beck was familiar with the Missouri CDL manual and knew he had to comply with it. Beck acknowledged the manual requires professional truck drivers to reduce their speed during the following circumstances: reduced traction, traffic, curves, and limited visibility. Beck violated these CDL manual requirements by failing to reduce his speed during the timeframe leading up to the collision and, instead, exceeding the posted speed limit for the curve in violation of the manual. Beck acknowledged he understood his failure to comply with the CDL manual could result in severe injury or death to others and further testified it is "common sense" that the faster the speed the more severe the impact and injury. Beck maintained he "had good visibility and very good traction." But the jury also heard from plaintiffs' accident

13

reconstructionist expert, who testified the CDL manual required Beck reduce his speed to two-thirds of the posted speed limit (43 mph) because of wet roads and, had Beck reduced his speed to 43 mph, he would have stopped 175.85 feet short of mother's vehicle and avoided the collision. Plaintiffs' expert testified "[e]xceeding the posted speed limit on a curve in a truck is extraordinarily dangerous[.]" Plaintiffs' expert also testified that, if Beck had driven the posted speed limit of 60 mph into the curve, he would have stopped 10.36 feet short of mother's vehicle and avoided the collision. Plaintiffs' trucking safety expert testified Beck's "incredible deviation from the standard of care" was a direct and contributing cause of the collision with mother's vehicle. In summary, the circuit court did not err in concluding there was sufficient evidence from which the jury could have concluded Beck showed complete indifference to or conscious disregard for the safety of others given his multiple violations of the Missouri CDL manual combined with his knowledge of the collision area conditions prior to and at the time of the collision and evidence of how a similarly situated professional truck driver could have and should have responded. The circuit court did not err in determining plaintiffs made a submissible case for aggravating circumstances damages as to Beck.

Likewise, the circuit court did not err in submitting aggravating circumstances damages to the jury as to Great Plains. Great Plains' president testified Beck was driving at an "acceptable" speed at the time of the collision and, despite the company handbook stating drivers should never exceed the speed limit, Great Plains had an "unwritten rule" it is "acceptable" for drivers to exceed the speed limit by 4 to 5 mph "[i]n all circumstances," including in a fatal collision. Great Plains' president testified, "I'd

14

probably have done the same thing [as Beck] if I was there [on the date of the collision]." Great Plains' safety director testified she believed Beck drove at a "safe" and "reasonable" speed during the timeframe leading up to the collision, and she would not recommend Beck do anything differently than he did. Great Plains did not require Beck to have additional training and instituted no remedial measures after the collision. The circuit court did not err in concluding there was sufficient evidence from which the jury could have concluded Great Plains showed complete indifference to or conscious disregard for the safety of others. The circuit court did not err in determining plaintiffs made a submissible claim for aggravating circumstances damages as to Great Plains. Points IV and V are denied.

## Conclusion

This Court affirms the circuit court's judgment.

_____
Ginger K. Gooch, Judge

All concur.