In the Matter of the CARE AND TREATMENT OF T.D., Appellant,

v.

STATE of Missouri, Respondent.

No. 27147.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 31, 2006.

Emmett D. Queener, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Brett W. Berri, for respondent.

KENNETH W. SHRUM, Judge.

This is a "Sexually Violent Predator" commitment case, authorized via sections 632.480 to 632.513 (the "Act").[1] In accord with a jury verdict, T.D. ("Appellant") was adjudged to be a sexually violent predator and was ordered confined to the custody of the department of mental health ("DMH").

On appeal, Appellant argues the trial court committed reversible error when it overruled a defense objection to certain testimony. The testimony at issue came from Dr. Hoberman, a psychiatrist who was a witness for the State. Specifically, Dr. Hoberman testified about a previous diagnosis made by Appellant's treating physician, Dr. Englehart. Appellant claims that such hearsay testimony "was not properly admissible under Section 490.065," the statute governing expert testimony in civil cases. We disagree. We affirm.

### RELEVANT PROVISIONS OF THE ACT

The Act defines a "sexually violent predator" as a person suffering from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility *and* who has previously pled guilty or been found guilty of a sexually violent offense. § 632.480(5), RSMo Cum. Supp. (2001). A "mental abnormality" is defined as a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior. § 632.480(2), RSMo Cum.Supp. (2001); *Thomas v. State*, 74 S.W.3d 789, 792 (Mo.banc 2002).

If a court or jury determines beyond a reasonable doubt that a person is a sexual-

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

ly violent predator as defined in the Act, such person "shall be committed to the custody of the director of the department of mental health for control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large." § 632.495, RSMo Cum.Supp. (2001).[2]

## FACTS

Appellant does not challenge the sufficiency of the evidence to support the jury's verdict that he is, in fact, a sexually violent predator. Suffice it to say, the evidence supported this determination. As stated previously, the only issue presented in this appeal is whether the trial court erred when it allowed Dr. Hoberman to testify about a previous diagnosis made by Dr. Englehart, a psychiatrist and medical director of the Missouri sex offender treatment center ("MSOTC"). As such, we confine our discussion to the instance where Dr. Hoberman said Dr. Englehart's "findings" were "significant" in forming his (Dr. Hoberman's) opinions about Appellant.

The culmination of Dr. Hoberman's testimony was that Appellant suffered from mental abnormalities (pedophilia, paraphilia, and antisocial personality disorder) making it more likely than not that Appellant would engage in predatory acts of sexual violence in the future if he were not confined to DMH. In reaching his professional diagnosis, Dr. Hoberman went through approximately 10,000 pages of documents of Appellant's history. These documents included "records of various juvenile placements," "child protection service documents," "court and law enforcement documents," and records from Appellant's current treatment facility

(MSOTC). Dr. Englehart's diagnoses—which were the object of Appellant's objections—were part of MSOTC's written annual review of Appellant as prepared by that facility.

Because Appellant declined to interview with Dr. Hoberman, the documents and records provided the basis for his diagnosis. Dr. Hoberman testified that reaching a diagnosis on the basis of records is a frequent practice in civil commitment cases. Moreover, Dr. Hoberman testified that the information he used in diagnosing Appellant was the type generally relied upon by professionals in the field of forensic psychology.

Dr. Hoberman testified Appellant suffered from a mental abnormality as that term is defined in the Act. Specifically, Dr. Hoberman diagnosed Appellant with paraphilia not otherwise specified, pedophilia, and antisocial personality disorder. All three conditions qualified as a "mental abnormality" under the Act. Dr. Hoberman testified that, in reaching his opinion, part of the information he considered was "the conclusions of other mental health professionals." However, Dr. Hoberman made it clear that he reached his own independent judgment and diagnosis, i.e., he did not merely adopt the conclusions of other professionals.

The State questioned Dr. Hoberman about the other doctors' opinions that he considered in rendering his diagnosis. In referring to Dr. Lacoursiere (whose videotaped testimony was played for the jury), Dr. Hoberman testified that their opinions were alike: "I think Dr. Lacoursiere and I agree that [Appellant] is characterized by an antisocial personality disorder. I think that he thought that there was significant

2. The statute was amended in 2006 to change the burden of proof to clear and convincing evidence.

evidence for a diagnosis of pedophilia. So I think in that regard, very similar."

The State next questioned Dr. Hoberman about diagnoses of Appellant made by MSOTC personnel. Specifically, he was asked, "Now, did you have any reports of information from that facility that would be significant to your diagnoses here today?" At this point, defense counsel objected, claiming that such testimony would only "bolster" Dr. Hoberman's testimony and would violate Appellant's alleged right to cross-examine such doctors. The trial court overruled the objections and allowed Dr. Hoberman to answer.

Thereon, Dr. Hoberman testified generally that information from the MSOTC was significant in forming his opinion. He first mentioned Dr. Englehart's diagnoses of Appellant as a significant informational item, saying: "Dr. Englehart diagnosed the antisocial personality disorder, but he also diagnosed [Appellant] with paraphilia NOS, as—as I did. He also indicated that there was, again, significant evidence for pedophilia, and also, I think diagnosed [Appellant] with exhibitionism." This isolated statement is the testimony Appellant challenges as inadmissible.

Dr. Hoberman also told the jury that other records from MSOTC were significant to his medical opinion, namely, records that documented Appellant's inability to control his behavior. Based on these records, Dr. Hoberman opined, "I think, 300–plus behavioral issues, violations . . . indicates that [Appellant] has substantial difficulty just controlling his behavior . . . in a highly structured setting where there are significant consequences for problem behavior."

In contrast to the State's evidence, Appellant presented expert medical testimony indicating that he did not suffer from a mental abnormality and was not a sexually violent predator. The jury disbelieved this evidence and found Appellant to be a sexually violent predator. Appellant was ordered to the custody of DMH, and this appeal followed.

## DISCUSSION AND DECISION

Appellant's sole point relied on maintains that the trial court committed reversible error when it allowed Dr. Hoberman to testify about the substance of Dr. Englehart's diagnosis. Appellant claims that such testimony only bolstered Dr. Hoberman's opinion and prevented Appellant from cross-examining Dr. Englehart. The premise of Appellant's argument is that Dr. Hoberman's testimony, regarding the records of the treatment facility and Dr. Englehart's diagnosis, was inadmissible under section 490.065. That premise is wrong.

> In pertinent part, the statute provides: "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable."

§ 490.065.3.

The purpose of the "facts or data" prong of the statute was to bring the legal practice in line with the standard practice exercised by experts in their respective fields. *Wulfing v. Kansas City Southern Ind., Inc.*, 842 S.W.2d 133, 152 (Mo.App. 1992).

For instance, in life and death situations, doctors routinely rely on numerous sources, including statements from third parties, in rendering an opinion or diagnosis. *See Glidewell v. S.C. Management, Inc.*, 923 S.W.2d 940, 951 (Mo.App.1996). In fact, the federal rule, which has perti-

nent parts that are substantively similar to the portions of section 490.065 at issue here, provides that "a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including ... *reports and opinions from ... other doctors.*" [3] FED.R.EVID. 703, advisory committee's note (emphasis added).

Before section 490.065.3 was enacted, doctors could not come into court and testify about the content of reports and opinions from other doctors; they could only state their own ultimate opinion or diagnosis. *Stallings v. Washington University*, 794 S.W.2d 264, 270 (Mo.App.1990). Before section 490.065, "[w]hen the reasons for the expert's opinion '[were] based in part on hearsay, as far as the witness [was] concerned, the accepted and proper way to present in evidence [the] opinion of [the] expert witness [was] to present competent evidence of those facts from some proper source, and then submit them to the expert witness in a hypothetical question along with other relevant matter.'" *Id.* (quoting *Davies v. Carter Carburetor, Inc.*, 429 S.W.2d 738, 751 (Mo.1968)). As this Court noted in another sexually violent predator case:

"The legislature recognized that it was inconsistent to allow experts to rely on hearsay while practicing their profession, but not let them rely on hearsay when rendering their opinion in court, unless substantial time and money were expended to bring those facts forth and put in evidence. It remedied this inconsistency by enacting section 490.065.3."

*Goddard v. State*, 144 S.W.3d 848, 854 (Mo.App.2004).

■ The practice of allowing an expert to testify as to facts and data of a type

reasonably relied upon by experts in the field "as a juridical principle, is justified by the premise that a witness with specialized knowledge is as competent to evaluate the reliability of the statements presented by other investigators or technicians" as a fact-finder is to pass upon the credibility of an ordinary witness on the stand. *Wulfing*, 842 S.W.2d at 152. "Medical records are the quintessential example of the type of facts or data reasonably relied upon by experts in the field of medicine." *Glidewell*, 923 S.W.2d at 951.

■ Here, Dr. Hoberman's testimony is a "quintessential example" of the type of testimony allowed under section 490.065.3. Dr. Hoberman specifically testified that, in reaching his opinion and diagnosis, he "considered" and found "significant" the medical records of Appellant and the opinions of other professionals, including Dr. Englehart. Further, because he could not interview Appellant, these records were the only available information. Importantly, Dr. Hoberman testified that these types of records and information were generally used by experts in the field of forensic psychology. Testimony of such reliance upon these types of facts and data is exactly what the legislature envisioned when it enacted section 490.065.3.

■ "Reliance on information and the opinions of others does not automatically disqualify an expert's testimony." *Grab ex rel. Grab v. Dillon*, 103 S.W.3d 228, 239 (Mo.App.2003). "An expert can rely on such information provided that those sources are not offered as independent substantive evidence, but rather serve only as a background for his opinion." *Whitnell v. State*, 129 S.W.3d 409, 416[19] (Mo. App.2004). That is precisely what hap-

---

3. For the differences between the federal rule and section 490.065.3 that are not at issue here, the reader may consult *State Bd. of Reg.* *Healing Arts v. McDonagh*, 123 S.W.3d 146, 155–56 (Mo.banc 2003).

pened here, and Appellant makes no argument that the testimony of Dr. Englehart's opinion was used as substantive evidence.[4] Point denied.

The judgment is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.

---

**4.** This is not to say that the medical records and Dr. Englehart's opinion contained therein were not otherwise admissible under the business records exception to the hearsay rule if properly qualified. *See Alberswerth v. Alberswerth,* 184 S.W.3d 81, 102[40] (Mo.App.2006); *State v. Moore,* 88 S.W.3d 31, 36 (Mo.App. 2002).