Benjamin R. HARRELL, Jr., and
Rosaella Harrell, Respondents,

v.

John L. COCHRAN, Margaret Cochran, Dennis L. Curry, Betsy Curry, Claycomo Gun and Repair, Inc., Appellants.

No. WD 65832.

Missouri Court of Appeals,
Western District.

Sept. 25, 2007.

R. Gregory Harrison, Liberty, MO, for appellants.

Steven D. Wolcott, Liberty, MO, for respondents.

Before VICTOR HOWARD, C.J., HAROLD LOWENSTEIN, PATRICIA BRECKENRIDGE,[1] PAUL SPINDEN, JAMES SMART, JOSEPH ELLIS, THOMAS NEWTON, RONALD HOLLIGER, and LISA WHITE HARDWICK, JJ.

THOMAS H. NEWTON, Judge.

The Appellants, John Cochran and Dennis Curry, appeal the jury trial verdict, awarding the Respondents, Bob and Rose Harrell, $900,000 in actual damages and $400,000 in punitive damages. We affirm.

**Factual and Procedural Background**

The Appellants purchased business assets of a gun shop, a gun range, and the building in which the businesses operated from the Respondents in August 2002. Additionally, the building housed an archery range and a gun repair shop located within the gun shop. A third party operated the archery range. The Respondents operated the gun repair shop. The sale agreement excluded the "hand tools, power tools, equipment, and other personal property of [the Respondents] which are in the area commonly referred to as the repair shop." It also required the Respondents to remove all personal property not included in the sale within ninety days from the execution of the contract. The parties also agreed that the Respondents would lease "the repair shop ... for the consideration of forty percent (40%) of all labor [a]nd all of the profit from the sale of parts which are furnished to repair shop by [the Appellants]."

After the consummation of the sale, the Respondents hired their son, Mr. Ben Harrell, to work in the repair shop. As compensation, Mr. Ben Harrell received a percentage of the labor costs from the Appellants. Because Mr. Ben Harrell was a gun expert, the Appellants hired him to work in the gun shop when he was not repairing guns. In December 2002, he began receiving a salary from the gun shop, in addition to the compensation from the repair shop.

In November 2002, the Respondents removed their property from all areas of the gun shop but not from the repair shop, which included a locked office with a floor safe, locked storage cabinets, and two other rooms. The Respondents were the only individuals with keys to the office and storage cabinets. Mr. Ben Harrell repeatedly told his parents that they needed to re-

---

1. Breckenridge, J., was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

move their property from the repair shop, at the request of the Appellants who wanted to use the space. Mr. Bob Harrell constantly requested more time, and the Appellants agreed. During the last conversation with Mr. Curry, before Mr. Bob Harrell was denied access to the repair shop, Mr. Curry told him not to worry about his possessions. Relying on this statement, the Respondents did not remove their property from the repair shop.

Eventually, Mr. Ben Harrell quit working at both the repair and the gun shops to serve in the United States Armed Forces. The parties agreed that the shop would remain closed until Mr. Ben Harrell returned. The Respondents still visited the repair shop as late as March 4, 2003.

On March 15, 2003, the Appellants hired a locksmith to pick the lock on the office door and re-key it. The locksmith also changed the locks to an outside door of the building. On July 3, 2003, the locksmith returned to drill the floor safe open and reset the combination; its contents were removed. Somewhere between March 2003 and July 2003, the Appellants cut the lock off the cabinets and discovered over three hundred guns. They contacted a Department of Alcohol, Tobacco, and Firearms (ATF) agent who told them to record all the guns in a federal bound book, which is a record of guns the business acquires and their disposition. They told the ATF agent that they opened the office and cabinets because their lawyer informed them that the items in the office and cabinets were abandoned. According to Mr. Cochran, they gained access to the storage cabinets and office so that an electrician could bring the building up to code.

Nevertheless, Mr. Curry and a customer, Mr. Ronald Roberts, placed the items, except for the weapons, from the office into boxes and inventoried the gun parts from the repair area before they were also placed in boxes with "Bob" written on the top of them. Between twenty-four and forty-eight hours after gaining access to the storage cabinets, Mr. Nathan Gill, an employee of the gun shop, inventoried the weapons in the office, which included guns, samurai swords, and knives, and inventoried the guns from the storage cabinets. All of the weapons were listed in a register deemed the "abandoned book" and the earliest entries were dated June 29, 2003. The guns that were found in the office and in the cabinets were placed in storage, put on display in the gun shop, or transferred into inventory for the gun shop.

Mr. Ben Harrell returned from the Air Force and in September 2003 went to the repair shop to obtain his father's tools; he was told he could not access them. Mr. Bob Harrell contacted the Appellants so he could access the repair shop, but they evaded him. Sometime later, Mr. Cochran called Mr. Bob Harrell and informed him that all of their property was abandoned and that he would not receive any of it back because it remained in the building almost a year after the sale of the business, exceeding the contract deadline for removal of such property. The Respondents obtained counsel and demanded their belongings. The Appellants refused, and the Respondents sued for the return of all items under replevin and conversion claims in October 2003. The Appellants filed a counterclaim for storage fees. In July 2004, the Respondents discovered some of their personal belongings in the trash can outside of the gun repair shop.

At trial, Mr. Bob Harrell testified that all the converted items, including guns and swords, were worth more than $600,000. In addition, the Respondents provided several exhibits to demonstrate the value of the converted items. The Respondents provided a list of five hundred and ten firearms with values assigned to all but

forty-three, with a value totaled at $371,770. Mr. Bob Harrell testified that he could not assign value to the forty-three guns without actually viewing their condition. The Respondents provided a list of the tools and equipment that were in the repair area with values assigned to each, with a value totaled at $38,255. They provided a list of the furniture and shelving that was in the office and storage area, with individual values assigned, except for a painting, with a total value of $21,855. They also provided a list of additional items with values assigned to each, except the Japanese swords, with a total value of $25,885. Finally, Mr. Harrell testified that the Japanese swords were difficult to value, but he compared one of them with a similar sword of historical note, allegedly worth 4.7 million dollars.

During closing arguments, the Respondents argued that the Appellants behaved outrageously and submitted an instruction for punitive damages. The trial court submitted the instruction to the jury over the Appellants' objection. The jury returned a verdict in favor of the Respondents for both actual and punitive damages. The Appellants filed a motion for new trial or in the alternative a remittitur, which the trial court denied. The Appellants appeal.

## Legal Analysis

The Appellants raise two points on appeal: (1) the trial court erred in overruling their motion for new trial on the issue of actual damages because the Respondents failed to produce competent or sufficient evidence of the fair market value of the personal property allegedly converted "in that neither the testimony [nor] exhibits offered by plaintiffs establishes the fair market [v]alue ... to be $900,000.00 and therefore the verdict was excessive"; and (2) the trial court erred in overruling their "objection to instruction number 10 offered by the [Respondents] on the issue of punitive damages because [their] conduct was a good faith mistake and did not rise to the level of an act done with malicious or wanton intent."

**Sufficiency of evidence and excessive verdict**

First, the Appellants argue that the trial court erred in denying its motion for new trial on the issue of actual damages because the jury verdict was excessive in that "neither the testimony or exhibits offered by [the Respondents] establishes the fair market value of the personal property allegedly converted to be $900,000." "A trial court has great discretion in approving a verdict or setting it aside as excessive." *Armon v. Griggs,* 60 S.W.3d 37, 40 (Mo.App. W.D. 2001). Therefore, we " 'will interfere only when the verdict is so grossly excessive that it shocks the conscience of the court and convinces the court that both the jury and the trial court abused their discretion.' " *Id.* (citation omitted). An excessive verdict alone does not entitle an appellant to a new trial. *Id.* He must also establish "the excessive verdict was the product of bias and prejudice by showing that the verdict was glaringly unwarranted by the evidence and that some trial error or misconduct by the prevailing party was responsible for prejudicing the jury against the defendant." *Id.* (citation and internal quotation marks omitted). A jury verdict is excessive when the amount of the verdict exceeds fair and reasonable compensation for plaintiff's damages. *Id.; Knifong v. Caterpillar, Inc.,* 199 S.W.3d 922, 927 (Mo.App. W.D. 2006).

The Appellants argue that the award was excessive because there was not sufficient evidence to support the verdict in that the values provided to the jury totaled only half of the verdict. They claim that

the other half is the improper value the jury assigned to the swords and knives; it was improper because the Respondents did not provide value for the swords and knives. The record indicates the values given for the converted items in the exhibits totaled $457,765, leaving a balance of $442,235 from the awarded $900,000. The Respondents contend that Mr. Harrell's testimony comparing the value of the swords with a similar Japanese sword selling for millions of dollars accounts for the remaining balance. The Appellants claim that Mr. Harrell's testimony did not provide a fair market value of the swords.

■ Our review of the record indicates that the Appellants failed to object to any of the evidence offered to prove fair market value of the converted items. Nor was this argument presented in the motion for new trial, so it is not preserved. *See Enos v. Ryder Auto. Operations, Inc.*, 73 S.W.3d 784, 788–89 (Mo.App. E.D.2002). "To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be set out in the motion for new trial then carried forward in the appeal brief." *Id.* (internal quotation marks omitted). Because Appellants failed to raise this insufficiency or competency argument with the trial court, it is not preserved.

■ The Appellants ask for review under plain error. Plain error review is rarely applied. *Id.* at 789. To succeed on plain error review, the appellant must demonstrate an obvious, evident, and clear error and a resulting manifest injustice or miscarriage of justice from the error. *Id.* Although we have discretion to review the claim for plain error, we will not because the attorney failed to object to the evidence. *See id.* (denying plain error review for error alleging that proper foundation was not laid for testimony concerning simi-

lar injuries because attorney failed to object). The first point is denied.

### Submissibility of Punitive Damages Instruction

■ Second, the Appellants assert that it was erroneous for the trial court to submit the punitive damages instruction to the jury because they acted on a good faith belief that the Respondents abandoned the property. "We review the evidence presented to determine whether, as a matter of law, it was sufficient to submit the claim for punitive damages." *Perkins v. Dean Mach. Co.*, 132 S.W.3d 295, 299 (Mo.App. W.D.2004). "In doing so, we view the evidence and all reasonable inferences in the light most favorable to submissibility." *Id.* "Whether there is sufficient evidence for an award of punitive damages is a question of law." *Id.* To justify punitive damages, there must be evidence that the Appellants "acted wrongfully and intentionally and did so without just cause or excuse." *Hinton v. State Farm Mut. Auto. Ins. Co.*, 741 S.W.2d 696, 700 (Mo. App. W.D.1987). The Appellants are not liable for punitive damages if they "act[ed] in good faith and in the honest belief [their] act[ions were] lawful." *Id.*

The Appellants argue that they are not liable for punitive damages because they acted in good faith by relying on advice from both legal counsel and an ATF agent. They claim that the evidence showed that their belief of abandonment of the property was based on their attorney's interpretation of the contractual provision, which required the Respondents to remove all property not included in the sale within ninety days from the execution of the contract. Although the attorney's advice was referenced several times, no evidentiary support was given for the attorney's opinion. There was no elucidation of the facts supplied to the attorney through the appellants' testimony, and the attorney did not testify. Moreover, there was no evidence

the attorney even read the contract himself. The jury could have believed that the defendants were trying to fabricate a plausible excuse through manipulated "legal advice." In addition, they also claim that the evidence proved that they recorded the guns only at the behest of the ATF agent. It is not the recording of the weapons, which was the alleged tortious act here but the conversion of those weapons.

■ A submissible case is made for punitive damages if clear and convincing evidence and inferences drawn therefrom are " 'sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference.' " *Perkins*, 132 S.W.3d at 299 (citation omitted). Here, the Respondents argue that the Appellants did not act upon a belief that the items were abandoned or the ATF agent's advice. The Respondents argue that the Appellants acted first and later found justification for their actions.

■ Abandonment occurs when the owner manifests an intent neither to use nor to retake the property into his possession. *City of St. Peters v. Hill*, 9 S.W.3d 652, 655 (Mo.App. E.D.1999). The Respondents adduced evidence to show that the Appellants could not have believed in good faith that the Respondents intended to relinquish their ownership of their valuable property. The property was obtained after breaking into each locked facility, which occurred within days of Mr. Bob Harrell's visit to the repair center. In addition, the Appellants failed to notify the Respondents that they changed the locks even though the Respondents were tenants. Nor did the Appellants provide a written termination of the lease agreement. Moreover, the Appellants lulled the Respondents into believing that their property was still secure under lock and key by telling them "not to worry about it," and subsequently refused to return the property after the Respondents requested access to it. There was evidence that the Appellants threw some of the items in the trash; Appellants bad faith is further demonstrated by the request in their counterclaim for $278,000 to compensate for reasonable storage charges.

Because there was evidence suggesting the Appellants' behavior constituted reckless indifference to the Respondents' rights and all evidence is viewed in the light most favorable to submissibility, the submission of the punitive damages was proper. Accordingly, there was clear and convincing evidence that the issue of punitive damages was submissible. The Appellants' second point is denied.

## Conclusion

In conclusion, we affirm the trial court's judgment.

All concur.