**John ROUSE, Appellant,**

v.

**Keith CUVELIER, et al., Respondents.**

**No. WD 73653.**

Missouri Court of Appeals,
Western District.

March 20, 2012.

Gary M. Steinman and Andrew F. Van-Ness, Gladstone, MO, for appellant.

Matthew M. Krohn, Trenton, MO, for respondents.

Before Division Two: GARY D. WITT, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

GARY D. WITT, Judge.

John Rouse ("Rouse") filed suit against Keith Cuvelier ("Cuvelier") and Super Gro of Iowa, Inc. ("Super Gro") based on a vehicular collision that occurred between them. Upon the conclusion of the trial, the jury found Rouse 100% at fault and a verdict was entered in favor Cuvelier. For the reasons explained herein, we affirm.

### Factual Background[1]

On August 16, 2007, Cuvelier was traveling northbound in his F–350 Ford pickup truck on Highway 65. At that time, Cuvelier was on his way home, hauling a load of organic fertilizer on a fourteen foot trailer for his company, Super Gro.

At approximately 4:00 pm, Cuvelier came upon Rouse, who was also traveling northbound in a John Deere tractor equipped with a front end loader with a two-prong hay fork[2] attached to the front.

---

1. "The pertinent facts are viewed in the light most favorable to the jury's verdict." *Hayes v. Price*, 313 S.W.3d 645, 648 (Mo. banc 2010).

2. A "hay fork" consists of two or sometimes three solid steel rods with pointed ends, approximately three to four feet in length, which mount on the front or rear of a tractor. The hay fork is driven into a large hay bale, allowing a tractor to pick up the hay bale and move it from one place to another.

The speed limit of the highway at this juncture was sixty miles per hour, and Rouse was traveling significantly slower than the posted speed limit.

After following Rouse's tractor for approximately one mile, the vehicles entered a portion of the highway where passing was allowed ("Passing zone"). Cuvelier activated his left turn signal and pulled out into the northbound lane of traffic to pass the other three slow moving vehicles in front of him. Cuvelier passed the first two vehicles, and as he passed Rouse's tractor, Rouse initiated a left turn.

Rouse did not see Cuvelier approaching. Cuvelier realized that Rouse was turning left toward him and Cuvelier attempted to avoid the accident by swerving to the left. The hay fork struck the passenger side mirror of Cuvelier's truck and scraped down the side of the truck. Subsequently, Cuvelier's trailer came into contact with Rouse's front tractor tire, causing the tractor to turn over onto its side.

Because of this accident, Rouse suffered injuries to his "neck, back, shoulder and arms." Specifically, Rouse tore a muscle in his shoulder, experiences numbness in his foot, and still has pain and/or "trouble" with his knee, hip, and arms.

On April 9, 2009, Rouse filed suit against Cuvelier and Super Gro in the Circuit Court of Mercer County.[3] From December 1, 2010 to December 3, 2010, this matter was tried before a jury. At the conclusion of trial, the jury found Rouse 100% at fault and a verdict was entered in favor of Cuvelier.

Rouse now appeals.

Further pertinent facts are outlined in the analysis section as necessary.

**Analysis**

Rouse brings six Points on appeal, some of which this Court addresses out of turn for ease of analysis.

In Point One, Rouse argues that the "trial court erred in submitting a comparative fault instruction to the jury because ... there was not substantial evidence presented by respondents to submit appellant's comparative fault for appellant's alleged failure to keep a careful lookout which warrants a new trial being granted." We disagree.

The Missouri Supreme Court recently outlined the following applicable principles in *Owens v. ContiGroup Co., Inc.* :

> Whether a jury was properly instructed is a question of law this Court reviews de novo. *Bach v. Winfield–Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). This Court reviews the record in the light most favorable to submission of the instruction. *Id.* Any issue submitted to the jury in an instruction must be supported by substantial evidence "from which the jury could reasonably find such issue." *Kauzlarich v. Atchison, Topeka, & Santa Fe Ry. Co.*, 910 S.W.2d 254, 258 (Mo. banc 1995). "Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case." *Powderly v. S. County Anesthesia Assocs. Ltd.*, 245 S.W.3d 267, 276 (Mo.App.2008). If the instruction is not supported by substantial evidence, there is instructional error, which warrants reversal "only if the error resulted in prejudice that materially affects the merits of the action." *Bach*, 257 S.W.3d at 608.

---

**3.** Because their separate legal identities as defendants is not relevant to the resolution of the issues raised on appeal, this Court will refer to the defendants simply as "defendant" or "Cuvelier" for ease of analysis.

344 S.W.3d 717, 723–24 (Mo. banc 2011) (quoting *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010)).

At the conclusion of the evidence, over Rouse's objection, the trial court submitted the following comparative fault instruction, instruction # 9, to the jury:

> In your verdict you must assess a percentage of fault to Plaintiff, whether or not Defendant Cuvelier was partly at fault, if you believe:
> First, Plaintiff failed to keep a careful lookout, and
> Second, Plaintiff was thereby negligent, and
> Third, as a direct result of such negligence, Plaintiff sustained damage.

■ It is undisputed that the trial court submitted this comparative fault instruction based on Cuvelier's theory that Rouse failed "to keep a careful lookout" prior to the collision. The Missouri Supreme Court has provided the following guidance as it pertains to such comparative fault instructions:

> In this case, the trial court submitted to the jury a "failure to keep a careful lookout" comparative fault instruction. The essence of the "failure to keep a careful lookout" claim is a failure to see and a failure to act.
> Alleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that, in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle in time thereafter to have taken effective precautionary action.
> The inquiry is two-fold: if the driver was keeping a careful lookout, could the driver have seen the danger; and, if the driver could have seen the danger, did the driver have the ability to take some precautionary measure such as veering,

utilizing a horn, or slowing speed to prevent the accident? The evidence must support a finding that a driver had the means and ability to have avoided a collision. Means and ability include sufficient time and distance considering the movement and speed of the vehicles. *Price*, 313 S.W.3d at 650 (internal citations and quotation marks omitted).

■ Based on the above law, Rouse has failed to demonstrate that the trial court erred in submitting the above comparative fault instruction because there was substantial evidence to support the submission. "The party seeking a 'failure to keep a lookout' instruction has the burden of showing that the other party could have reacted in time to avoid the accident had he or she been keeping a careful lookout." *Smith v. City of Hannibal*, 297 S.W.3d 926, 928, n. 3 (Mo.App. E.D.2009). Rouse argues that Cuvelier did not meet this burden, but when reviewing "the record in the light most favorable to submission of the instruction," we disagree. *Owens*, 344 S.W.3d at 723.

Here the parties were traveling northbound on U.S. Highway 65. At that time, Rouse was driving between twenty to twenty-five miles per hour in a sixty mile per hour zone. Rouse was aware that there was at least one vehicle behind him. Prior to turning, Rouse slowed down his tractor "to about 7 to 5 miles an hour." Despite the fact that he was traveling at such a slow speed on a highway, there was sufficient evidence from which the jury could conclude that Rouse did not use the "means" available to him to avoid "the danger" of colliding with Cuvelier's passing car. *Hayes*, 313 S.W.3d at 650. Specifically, while Rouse claimed at trial that he looked into his rear-view mirror prior to turning, Rouse was impeached with his deposition testimony that he "never checked [his] rearview mirror" prior to

turning. Rouse also testified at trial that he did not "turn around to [his] left and look" because "[h]ell, no, I've got a mirror."

Based on these facts, there was substantial evidence from which the jury could have reasonably apportioned some fault to Rouse, in that Rouse could "have seen the danger" of Cuvelier's oncoming car by simply looking over his left shoulder to see behind him prior to or during his turn, thereby allowing Rouse to avoid the collision altogether by refraining from turning while Cuvelier passed in his vehicle in the other lane of traffic. *Hayes,* 313 S.W.3d at 650.

In arguing that the trial court erred, Rouse argues that the facts of *Hayes* are analogous to the instant case. We disagree. In *Hayes,* an automobile and a motorcycle were traveling on the same road in the opposite direction of one another. 313 S.W.3d at 649. When the automobile turned left, it crossed into the motorcycle's lane of traffic and collided into the motorcycle. *Id.* What distinguishes *Rouse* is that the motorcycle "had the right-of-way, however, because he was proceeding straight through the intersection on the green light, whereas [the automobile] was turning left," and thus the motorcycle "was justified in assuming that [the automobile] would yield to oncoming traffic." *Id.* at 649–50. Based on these facts, the Missouri Supreme Court concluded that the automobile driver

> failed to present substantial evidence to support the submission of [the motorcyclist's] comparative fault because there was no evidence that a reasonable driver could or should have seen any indication of a danger at a time that would allow him to have the means and ability to use an evasive action to avoid the collision.

*Id.* at 652. Accordingly, the Court held that "[t]he portion of the trial court's judg-

ment accessing 20 percent of the fault to [the motorcyclist] is reversed." *Id.*

Here, *Hayes* is distinct from the instant matter because the trial court did not err in concluding that a jury issue existed as to whether Rouse was "exercising the highest degree of care" when he failed to look behind him prior to turning when he had reduced his speed to five miles per hour on a highway, knowing that at least one car had been behind him for some period of time prior to his turn. *Id.* at 652.

■■■ Furthermore, we believe that Rouse has failed to demonstrate that any alleged error "resulted in prejudice that materially affects the merits of the action." *Owens,* 344 S.W.3d at 723–24. "Any error in submitting a comparative fault instruction is harmless when the jury returns a verdict attributing one hundred percent fault to the complaining party." *Johnson v. Missouri Highway and Transp. Comm'n,* 113 S.W.3d 240 (Mo.App. E.D. 2003). In this case, eleven of the twelve jurors returned a verdict in defendant's favor and found plaintiff one hundred percent at fault.

Based on these facts, the comparative fault instruction did not materially affect the merits of the action because had the comparative fault instruction not been given, the jury would have simply rendered a verdict in Cuvelier's favor, since they found that Rouse did not meet his burden to show that Cuvelier's alleged negligence was in any way the cause of the accident. *See Skinner v. Leggett & Platt, Inc.,* 325 S.W.3d 520, 524–25 (Mo.App. S.D.2010) ("Here, the verdict returned was unequivocally in favor of Respondent explicitly finding Respondent "0%" at fault.... [T]he verdict in this case, finding zero fault in Respondent, negates any allegation of error in giving a comparative fault instruction. The jury did not reach issues of

comparative fault so any error in the instructions was harmless."); *see also Lee v. Mirbaha,* 722 S.W.2d 80, 84 (Mo. banc 1986) ("Because the jury found no liability on the part of the defendants and returned a general verdict for the defendants under instructions not dependent on Instruction Nos. 11 and 18, we find no prejudice to have resulted to the plaintiffs.").[4]

For all of the aforementioned reasons, Point One is denied.

In Point Five, Rouse brings an almost identical argument as raised in Point One in arguing that the trial court erred because "there was not substantial evidence submitted at trial which supported respondents' comparative fault jury instruction submitted to the jury in that respondents failed to present substantial evidence that appellant failed to keep a careful lookout." For the reasons articulated in detail above (which will not be needlessly duplicated herein), we also reject this claim on appeal.

Point Five is denied.

In Point Six, Rouse argues that the "trial court erred in denying appellant's motion for judgment notwithstanding the verdict, or alternatively, motion for new trial because the verdict for respondents was against the weight of the evidence in that there was substantial evidence presented that respondent Cuvelier failed to keep a careful lookout and was the sole cause of the automobile collision at issue."

Here, Rouse brings two claims: (1) that the trial court erred in denying his motion for judgment notwithstanding the verdict, and (2) that the trial court erred in denying his motion for new trial. Neither claim has merit.

■ As it pertains to his argument that the trial court erred in denying his motion for judgment notwithstanding the verdict, "the standard of review for the denial of the *plaintiff's* motion for JNOV is no different than a denial of a motion for directed verdict and parties bearing the burden of proof generally are not entitled to a directed verdict." *Bauer v. Bowes,* 350 S.W.3d 478, 481 (Mo.App. W.D.2011) (internal quotation marks omitted and emphasis original). We explained the logic of this rule to be the following:

> A directed verdict is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be. This is in recognition of the fact that the defendant, who has the benefit of the burden of proof, is entitled to try the case with no evidence at all and to rely solely upon the jury disbelieving the plaintiff's evidence. This strategy may result in a loss for the defendant, but it will not be on a directed verdict; the defendant is entitled to have the case go to the jury.

---

4. We recognize that today's case is not identical to the one in *Lee* because in that case "the jury was never required to reach the question of apportionment of fault" whatsoever based on the applicable instructions. *Id.* Here, however, the jury did reach the issue of apportionment of fault because the verdict director required the jury to assess percentages of fault——in this case the jury returned a verdict apportioning fault at 0% percent for Cuvelier and 100% for Rouse. But nothing in *Lee* can be read to give meaning to this distinction because in both cases "[w]e must assume ... that the jury followed the instruc-

tions they were given and would have assessed a percentage of fault to the defendant had they found that each of the hypothesized facts were established." *Id.* Furthermore, like in *Lee,* "[t]he verdict, however, was unequivocally returned in favor of the defendants," and "[t]he jury necessarily must have concluded that the plaintiffs failed to establish at least one of the propositions necessary to return a verdict in their favor." *Id.* Therefore, we conclude that our holding today is consistent with the Missouri Supreme Court's holding in *Lee.*

*Id.* at 481–82 (internal citations and quotation marks omitted).

██ Here, there can be no doubt that Rouse, as plaintiff, bore the burden of proof at trial. Accordingly, the jury was entitled to disbelieve Rouse's evidence that Cuvelier's negligence caused the collision in question. *Id.* Therefore, Rouse was not entitled to a directed verdict or JNOV.[5]

██ Rouse's similar argument, that the trial court erred in denying his motion for new trial because there was substantial evidence to support his claim at trial, must fail for similar reasons:

> Plaintiff's contention that the jury's verdict in favor of Defendant is not supported by substantial evidence is without merit. Plaintiff bore the burden of proving its breach of contract case. Because Plaintiff bore the burden of proof, "a verdict in [D]efendant's favor need not be supported by any evidence." *Warren v. Thompson,* 862 S.W.2d 513, 514 (Mo.App. W.D.1993) (citing *Bakelite Co. v. Miller,* 372 S.W.2d 867, 871–72 (Mo.1963)). Where a party bears the burden of proof, it is within the jury's prerogative to find against that party, even if that party's evidence is uncontradicted and unimpeached. *Ratcliff v. Sprint Mo., Inc.,* 261 S.W.3d 534, 542 (Mo.App. W.D.2008). It is well-settled that "the sufficiency of the evidence to support a defendant's verdict is not a question amenable to appellate review." *Warren,* 862 S.W.2d at 514.

*River City Dev. Associates, LLC v. Accurate Disbursing Co., LLC,* 345 S.W.3d 867, 872–73 (Mo.App. E.D.2011).

For all of these reasons, Point Six is denied.

In Point Two, Rouse argues that the trial court erred "in allowing [Cuvelier's] counsel to repeatedly argue to the jury and infer that [Rouse] had a legal duty to pull off on to the right shoulder of the highway and allow trailing traffic to pass when no such legal duty or obligation exists," and Rouse further argues that he was prejudiced because these arguments "lead [sic] the jury to believe that [Rouse's] failure to pull over and allow trailing traffic to pass caused the accident at issue as reflected in the jury's assessment of 100% fault to [Rouse] in its verdict." We disagree.

The Eastern District of this Court has outlined the applicable law as follows:

> A trial court has considerable discretion in deciding whether to admit or exclude evidence at trial. *State v. Madorie,* 156 S.W.3d 351, 355 (Mo. banc 2005). We give great deference to the trial court's evidentiary rulings and will reverse the trial court's decision on the admission of evidence only if the court clearly abused its discretion. *Id.*; *Self v. Brunson,* 213 S.W.3d 149, 156 (Mo.App. E.D.2006). When reviewing for an "abuse of discretion" we presume the trial court's finding is correct, and reverse only when the ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Sherar v. Zipper,* 98 S.W.3d 628, 632 (Mo.App. W.D. 2003). Upon finding an abuse of discretion, this court will reverse only if the

---

5. While a directed verdict for a plaintiff may be warranted where the defendant has admitted all of the necessary facts to establish liability, this is not a case in which Cuvelier made such admissions. *See All American Painting, LLC v. Financial Solutions and Associates, Inc.,* 315 S.W.3d 719, 723 (Mo. banc 2010).

prejudice resulting from the improper admission of evidence is outcome-determinative. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000). *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo.App. E.D.2009).

On appeal, Rouse highlights nine specific times when Cuvelier injected this type of allegedly improper evidence into the trial. However, of the nine occasions that Rouse cites alleging that Cuvelier engaged in "improper cross-examination," the record shows that Rouse failed to object the vast majority of the time. It was only after much of this questioning had already occurred that Rouse first raised an objection, and by this time the evidence, even if improper, was of a cumulative nature. "Cumulative evidence is additional evidence that reiterates the same point." *Saint Louis Univ. v. Geary*, 321 S.W.3d 282, 292 (Mo. banc 2009). "A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." *Id.* Even if the trial court had sustained the objections to the later offered evidence the first time an objection was raised, that same evidence was already before the jury on multiple occasions without objection. For this reason alone, we may deny this Point Relied On.[6]

Furthermore, contrary to Appellant's argument before this Court, at no time did Cuvelier's trial counsel state that Rouse had a "legal duty" to pull over to allow other vehicles to pass. Rather, some of the evidence that Rouse complains of

merely highlighted how Rouse was aware that when he drove his tractor on the highway that there were often motor vehicles stacking up behind him because of his slow rate of speed, and that these vehicles would sometimes pass him in the opposite lane of traffic. One such example is the following:

Q. And the entire time if traffic was back up behind you, they just had to go out around you; is that right?

A. Yes, I have just as much right on the highway as they do . . .

Accordingly, this evidence simply illustrated the defense's theory of the case that Rouse was aware that other vehicles may pass him when he is driving a tractor at a slow rate of speed on the highway and had he been properly on the lookout for passing motorists prior to turning, this accident would not have occurred.

Even when assuming that Rouse is correct that some of this evidence had a tendency to improperly suggest that the law required Rouse to pull his vehicle onto the shoulder in order to let other vehicles pass, we conclude that any such evidence was harmless. In closing arguments, both Rouse and Cuvelier were unequivocal in telling the jury that the law did *not* require Rouse to pull over to let other vehicles pass. Indeed, Defendant's closing argument just highlights how this evidence did not mislead the jury as it pertains to the law, but simply argued the defense's theory of the case:

*Sprague v. Sea*, 152 Mo. 327, 53 S.W. 1074, 1078 (Mo.1899). "[A] party will not be heard to complain of alleged error in which, by his own conduct at the trial, he joined or acquiesced." *Taylor v. Cleveland, C.C. & St. L. Ry. Co.*, 333 Mo. 650, 63 S.W.2d 69, 75 (Mo. 1933). Accordingly, this is another basis from which this Court denies the instant relief requested.

---

**6.** It is also worth noting that, while Rouse complains on appeal of instances where Cuvelier's trial counsel allegedly raised this improper issue before the jury, it is clear from a review of the record and Rouse's own appellate brief that *Plaintiff is the party who first injected this issue into evidence before the jury.* Under the invited error rule, "a party is estopped from complaining of an error of his own creation, and committed at his request."

[Plaintiff] talks about responsibility, taking responsibility.... The evidence has been, ladies and gentlemen, there was a shoulder. It was more than wide enough for the trailer and tractor. He could have gotten over. No, we travel at 20 miles per hour, and we just let everybody wait. Okay? You know, they say, well, that's not the law, and it's true. That's true. It may not be the law, but what the instructions will say is that an operator of a tractor is obligated to operate it at the highest degree of care, what a very careful person would do under the same similar circumstances.... [I]t is the law that every driver has to keep a careful lookout for not only what's in front of him, but behind him, especially when you're operating a tractor, because you're backing traffic up on the highway. He knew that. And as he proceeded north, the longer it took, the more traffic backed up, the more foreseeable it is that somebody's going to pass your tractor. Therefore, as a tractor operator, you've got to be darn sure that somebody's not going to pass you when you get ready to turn left.

Certainly nothing in the jury instructions indicated that Rouse had a legal duty to pull to the side and let vehicles pass.

Finally, Rouse simply assumes on appeal that this evidence pertaining to pulling over to let other vehicles pass was prejudicial because it "lead [sic] the jury to believe that [Rouse's] failure to pull over and allow trailing traffic to pass caused the accident at issue as reflected in the jury's assessment of 100% fault to [Rouse] in its verdict." We disagree. This argument neglects to consider, as explained in detail above in Point One, that there was evidence at trial from which the jury could conclude that Rouse's *failure to look behind him* prior to turning left while operating the tractor at such a low rate of speed on a highway is what caused the accident.

For all of these reasons, Point Two is denied.

In Point Three, Rouse argues that the trial court "erred by allowing Respondents' counsel to argue and infer during cross examination that Appellant did not have permission to pull into the Missouri Department of Transportation Drive," and that this error was prejudicial because it "lead [sic] the jury to believe that Appellant was at fault for the accident at issue." [7] We disagree.

Rouse did not properly object to this evidence at trial, nor did he include this argument in his motion for new trial; thus he has failed to preserve this issue for appeal:

> It is within this Court's discretion to review for plain error. *Rule 84.13(c)*.[8] In deciding whether to exercise our discretion, we determine whether the trial court "committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *In re J.L.B.*, 280 S.W.3d 147, 155 (Mo.App. S.D.2009). "[W]hile an unpreserved claim may be reviewed for plain error in this Court's discretion, plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." *Atkinson v. Corson*, 289 S.W.3d 269, 276 (Mo.App.

---

**7.** At trial the evidence established that at the time of the accident Rouse was turning into a private parking lot belonging to the Missouri Department of Transportation. This drive was marked with a sign which indicated it was a private parking lot and was restricted to authorized vehicles only.

**8.** All rule citations are to the Missouri Rules of Civil Procedure (2011), unless otherwise indicated.

W.D.2009) (internal quotation omitted). "We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Id.* at 276–77 (internal quotation omitted). Accordingly, in determining whether to exercise our discretion to provide plain error review, we look "to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen v. Express Fin. Servs., Inc.,* 145 S.W.3d 857, 864 (Mo.App. W.D. 2004).

If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court actually committed evident, obvious and clear error that affected substantial rights. However, as in the case of regular appellate review, not every obvious, evident and clear error found in plain error review requires reversal. In the case of regular review, to be reversible, the error found must have prejudiced the appellant. Likewise, in the case of plain error review, the error must have prejudiced the appellant, except that such prejudice must constitute manifest injustice or a miscarriage of

justice. Thus, in the second step of reviewing for plain error, the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage of justice.

*Hogan v. Board of Police Com'rs of Kansas City,* 337 S.W.3d 124, 133 (Mo.App. W.D.2011).

■■■ Rouse complains of four specific instances wherein "[Cuvelier's] improper cross-examination of [Rouse] inferred that [Rouse] solely caused the accident because [Rouse] did not have permission, or that he was breaking the law, by turning into the Missouri Department of Transportation's drive." However a review of the record shows that Rouse never made this objection before the trial court.[9] "To preserve evidentiary questions for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be set out in the motion for new trial then carried forward in the appeal brief." *Harrell v. Cochran,* 233 S.W.3d 254, 259 (Mo.App. W.D.2007). "Because Appellant[ ] failed to raise this insufficiency or competency argument with the trial court, it is not preserved." *Id.* In this case, like in *Harrell,* "[a]lthough we have discretion to review the claim for plain error, we will not because the attorney failed to [specifically] object to the evidence." *Id.*[10]

For all of these reasons, Point Three is denied.

---

9. After Rouse was asked whether he asked someone "for permission to pull in there," Rouse made an objection to the "relevance" of the evidence. This objection did not preserve the issue he argues on appeal. In addition, Rouse failed to address this issue in any fashion in his motion for new trial.

10. Even were we to reach the merits of this claim, it would fail simply because Rouse fails to articulate how this evidence specifically resulted in outcome determinative prejudice.

*Williams,* 281 S.W.3d at 872. While Rouse claims that this evidence led the jury "to believe that appellant was at fault for the accident at issue," he cites no authority or support for this baseless conclusion. Rather, as explained in Point One, Rouse's argument neglects the fact that there was evidence at trial that allowed the jury to conclude that Rouse's conduct in failing to keep a careful lookout in operating the tractor is what caused the accident.

In Point Four, Rouse argues that the trial court erred "in allowing information contained in medical records not admitted into evidence be presented to the jury over objection because the hearsay contained in the medical records regarding prior injuries were prejudicial to appellant in that this evidence inferred ... Appellant was somehow prone to automobile accidents."

In this Point, Rouse raises seven distinct arguments as to why the "trial court erred by allowing Respondent's expert to read from medical records not admitted into evidence and to testify to hearsay contained in medical records not admitted into evidence." "A single point relied on that groups multiple, disparate claims is multifarious, does not comply with Rule 84.04, and generally preserves nothing for appellate review." *Gordon v. Heller*, 352 S.W.3d 411, 413, n. 2 (Mo.App. E.D.2011). "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Miller v. O'Brien*, 168 S.W.3d 109, 112 (Mo.App. W.D.2005). Nonetheless, we choose to review these claims of error "despite this shortcoming in the point relied on." *Id.*

Rouse's first sub point argues the following: "Respondents' expert witness read from a note pad and had a series of other documents regarding Appellant's injuries that Appellant did not have an opportunity to review nor were they admitted in evidence." But this argument is not a basis for relief because, contrary to his argument, the record establishes that the trial court took a recess and allowed Rouse's trial counsel to review Dr. Boulware's notes.

The issue of Dr. Boulware's notes first came up during cross-examination, when Rouse sought to voir dire the witness regarding these notes. After the trial court allowed Rouse to voir dire the witness on this subject, and after Rouse in fact was given the opportunity to review the notes, *no further objection or request for relief was made to the trial court by Rouse in this regard.* "The trial court cannot avoid error or make an intelligent ruling on the issue unless specific objections are made at trial, and we will not convict a trial court of error on an issue that it had no chance to decide." *Kline v. City of Kansas City*, 334 S.W.3d 632, 642, n. 4 (Mo.App. W.D.2011) (citation omitted).

Furthermore, this claim is also unreviewable on appeal because Rouse failed to mark the notes in question as an exhibit to preserve this issue for appeal and failed to include the doctor's notes in the legal file before this Court. "It is the appellant's responsibility to include trial exhibits that are necessary to our disposition of the appeal, Rule 81.12(e), and his failure to do so results in an assumption that the exhibit is immaterial to the appeal." *Kline*, 334 S.W.3d at 642, n. 4. Accordingly, this Court has nothing from which to review the "notes" complained of on appeal. Simply put, Rouse has not preserved anything for review as it pertains to this sub issue.

Finally, Rouse cannot illustrate prejudice in this regard, even assuming that we were to reach the merits of this argument because, contrary to his argument on appeal, Rouse *was given* an opportunity to review the notes in question (as previously explained above).

Rouse's second sub point argues that: "Respondents' expert testified to hearsay contained in Dr. Haas's medical records regarding Appellant's back injuries. Appellant objected and the Trial Court never ruled on said objection." By Rouse's own admission, he failed to obtain a ruling on his objection. "It is the objecting party's responsibility to insure that the trial court has heard and ruled on every

objection." *Brandt v. Csaki,* 937 S.W.2d 268, 275 (Mo.App. W.D.1996). "The objecting party's failure to obtain a ruling on an objection preserves nothing for appellate review." *Id.*; *see also State v. Smith,* 744 S.W.2d 476, 478 (Mo.App. W.D.1987) ("By failing to obtain a ruling on his objection, the objection is deemed to have been abandoned.").

▇▇▇ Here, in response to the objection by Rouse that Dr. Boulware was referencing records that did not "exist," the trial court instructed opposing counsel to "clarify those records." After such clarification was made by the witness, Rouse did not renew his objection and/or seek a ruling on his original objection, and therefore counsel has failed to preserve this issue for review.

Rouse's third sub point argues the following: "Respondents questioned Respondents' expert regarding Appellant's 'low back complaints' in Appellant's medical records made prior to August 16, 2007. Appellant raised numerous objections, including but not limited to hearsay, and the trial court overruled said objections. Respondents' expert was permitted to testify to hearsay contained in Appellant's medical records not admitted into evidence."

▇▇▇ Rouse objects to Dr. Boulware's testimony as hearsay, but ignores the body of case law that establishes that this constitutes admissible evidence. As outlined by the Eastern District of this Court below, the trial court did not abuse its discretion in admitting Dr. Boulware's testimony in this regard "under an exception to the hearsay rule":

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Doe v. McFarlane,* 207 S.W.3d 52, 72 (Mo.App. E.D.2006). To be admissible, a hearsay statement must meet the requirements of an exception to the rule. *Id.* "Statements made to a physician, or contained in hospital records, even if characterized as medical history, are admissible insofar as such statements are reasonably pertinent to diagnosis and treatment." *Morrow v. Fisher,* 51 S.W.3d 468, 472 (Mo.App. S.D.2001) (*quoting Breeding v. Dodson Trailer Repair, Inc.,* 679 S.W.2d 281, 285 (Mo. banc 1984)). "As statements of history from the patient are admissible, then they may be relied upon by a medical expert and are a proper basis for opinion testimony." *Id.* (*citing* Section 490.065.3 RSMo (2000)). The relevant portion of Section 490.065.3 states:[11]

The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

"The purpose of the 'facts or data' prong of the statute was to bring the legal practice in line with the standard practice exercised by experts in their respective fields." *In the Matter of the Care and Treatment of T.D. v. State,* 199 S.W.3d 223, 226 (Mo.App. S.D.2006)(*quoting Wulfing v. Kansas City Southern Ind. Inc.,* 842 S.W.2d 133, 152 (Mo.App. W.D.1992)). Medical experts are allowed to "rely on information and opinions of others provided that those sources are not offered as independent substantive evidence, but rather serve only as a background for his opinion." *In the Matter of the Care and*

---

11. All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

*Treatment of T.D.,* 199 S.W.3d at 227. "Medical records are the quintessential example of the type of facts or data reasonably relied upon by experts in the field of medicine." *Id. (quoting Glidewell v. S.C. Management, Inc.,* 923 S.W.2d 940, 951 (Mo.App. S.D.1996)). *Lauck v. Price,* 289 S.W.3d 694, 698–99 (Mo.App. E.D.2009).

Dr. Boulware testified that Rouse's injuries as a result of the accident were minimal in nature, and should have been resolved in only six to twelve weeks. In reaching this conclusion, because he did not personally treat Rouse, Dr. Boulware testified that he reviewed Rouse's various medical records in order to form his expert opinions.

Here, Rouse has failed to even attempt to explain why the complained of evidence did not fall within the above exception to the hearsay rule.[12] This Court will not attempt to set forth arguments on Rouse's behalf as to why this well-known exception to the hearsay rule should not apply because to do so would be engaging in improper advocacy on his behalf. *City of Lee's Summit v. Cook,* 337 S.W.3d 757, 758 (Mo.App. W.D.2011) (This Court must "ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made.").

■ Rouse's fourth sub point argues the following: "Respondents' expert testified regarding highlighted portions of Northeast Regional Medical Center's Medical Records from 1999 that were not admitted into evidence. The Trial Court allowed respondents to publish said records to the Jury."

Yet again, Rouse complains that the trial court erred in admitting specific evidence *that he did not object to at trial.* For this

reason alone, Rouse has failed to preserve the issue for appeal. *Hogan,* 337 S.W.3d at 133.

Rouse's seventh sub point argues the following: "Respondents' counsel cross-examined Appellant regarding back injuries and medical records from Northeast Regional Medical Center's Medical Records not admitted into evidence. Appellant objected and the [t]rial [c]ourt sustained said objection. However, Appellant had already 'rung the bell' in answering Respondents' questions."

■ Once again, Rouse has failed to preserve this argument for appeal. Rouse failed to seek any further relief (such as a curative instruction, or a request for mistrial) from the trial court after it granted his evidentiary objection. "Because [his] objection was sustained and no further remedial action was requested, [Rouse] has failed to preserve [his] claim that the trial court erred in failing to grant a mistrial." *Goltz v. Masten,* 333 S.W.3d 522, 524 (Mo.App. W.D.2011); *Wright v. Barr,* 62 S.W.3d 509, 533 (Mo.App. W.D.2001) ("A party may not assert as error that the trial court failed to do more than was requested.").

We decline to review this issue for plain error.

■ Finally, even if Rouse had preserved all of the above issues raised in this Point Relied On for appellate review *and* the trial court had erred in admitting all of this into evidence at trial, Rouse has failed to demonstrate that any prejudice occurred to him that entitles him to relief on appeal. As previously stated, "[u]pon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is out-

---

12. For the same substantive reason, we must reject Rouse's fifth and sixth sub point. We will not duplicate this analysis for each of these sub points because to do so would be unnecessarily duplicative.

come-determinative." *Williams*, 281 S.W.3d at 872.

In his brief, the only argument Rouse makes as it pertains to prejudice from the admission of this complained of evidence was that "Appellant was prejudiced in that Appellant's medical records reflecting prior injuries were presented to the Jury with no basis that these prior injuries were the same as those Appellant claims in this cause. As a result, Appellant was prejudiced and did not receive a fair trial." Rouse ignores the fact that evidence pertaining to Rouse's prior injuries is admissible on the issue of damages to the extent that they impact his claim of pain and suffering from the same parts of his body in the instant lawsuit. *See Miller v. Engle*, 724 S.W.2d 637, 640–41 (Mo.App. W.D. 1986) ("The records do establish that Miller had voiced repeated complaints about headaches for many years and that he had previously received treatment for various head injuries.... The records were appropriate evidence for the jury to consider in deciding whether to believe Miller's testimony about the onset of his headaches and to evaluate the testimony of appellant's medical expert who was not given the history of previous accidents and complaints reflected in the records.").

Furthermore, this evidence pertained to the extent of Rouse's *damages*, not to what caused the underlying accident itself.[13] But here, where the jury found Rouse 100% at fault for the accident and found that no alleged negligence on the part of Cuvelier caused the accident, the jury did not even have to reach the issue of damages and, therefore, any error in this regard was at best harmless. "When the ... evidence relates to damages, the error, if any will be considered harmless if the jury rules against the appellant on the issue of liability." *Peters v. Johnson & Johnson Products, Inc.*, 783 S.W.2d 442, 445 (Mo.App. E.D.1990). Because the jury found against Rouse on the issue of liability, he cannot demonstrate any prejudice as it pertains to this evidence regarding Rouse's damages.

For all of the aforementioned reasons, Point Four is denied.

### Conclusion

The judgment of the circuit court is hereby affirmed.

All concur.

---

**13.** In his Point Relied On, Rouse make a very brief and passing reference to the fact that some of the evidence pertained to injuries he sustained in a previous automobile accident, and that therefore this illustrated that "Appellant was somehow prone to automobile accidents." Rouse failed to elaborate on this argument in his analysis section of the brief, and in any event Rouse has failed to articulate that he made this specific objection before the trial court, or that at any time opposing counsel actually used any of this evidence to argue any issue pertaining to Rouse's *liability*.

Finally, even assuming that this evidence pertained in any way to liability, Rouse has still failed to demonstrate prejudice. Simply put, Rouse fails to establish that the jury entered its verdict because of evidence regarding Rouse's prior vehicular accident; rather, as outlined in detail in Point One, there was evidence presented at trial from which the jury could conclude that Rouse was not keeping a careful lookout prior to turning on a highway while traveling at a very slow rate of speed and that this was the sole cause of the accident.